ROSE T. ROBERTS AND HUSBAND, JAMES ROBERTS v. DURHAM COUNTY HOSPITAL CORPORATION AND JAMES E. DAVIS

No. 8114SC726

(Filed 6 April 1982)

1. **Limitation of Actions § 4.1; Physicians, Surgeons, and Allied Professions § 13— medical malpractice—leaving foreign object in body—statute of limitations not applied retrospectively**

    The statute requiring a malpractice action based upon the leaving of a foreign object in the body during the performance of professional services to be commenced within one year after discovery thereof, G.S. 1-15(c), did not operate retrospectively on an accrued cause of action where plaintiff's injury was not discovered and her claim thus did not accrue until after the effective date of the statute.

2. **Physicians, Surgeons, and Allied Professions § 13— medical malpractice—leaving foreign object in body—constitutionality of statute of limitations**

    The statute requiring a malpractice action based upon the leaving of a foreign object in the body during the performance of professional services to be commenced within one year after discovery thereof, G.S. 1-15(c), is not unconstitutionally vague because it fails to define "malpractice" and "professional services." Nor does the statute violate the equal protection clause of the Fourteenth Amendment to the U.S. Constitution or the exclusive emoluments provision of Article I, § 32 of the N.C. Constitution when applied in a medical malpractice case since it is rationally related to maintaining sufficient medical treatment in this State.

Roberts v. Durham County Hospital Corp.

APPEAL by plaintiffs from *Herring, Judge.* Judgments entered on 6 and 7 April 1981 in Superior Court, DURHAM County. Heard in the Court of Appeals 11 March 1982.

Plaintiffs initiated this action on 20 November 1980 by obtaining a summons and the filing of a complaint. The allegations of the complaint that are pertinent to this appeal are as follows:

1. On 15 September 1975, plaintiff was admitted by defendant Davis to Watts Hospital, operated by defendant Durham County Hospital Corporation, for esophageal ulceration and perforation which required several days of intensive care unit-type care and multiple intravenous catheters.

2. Plaintiff was discharged on 6 October 1975, and did well except for recurrent swelling and sharp pain in her right arm and shoulder.

3. On 9 January 1978, plaintiff was examined at Duke University Medical Center where she was diagnosed for the first time as having two pieces of intravenous catheter in her cephalic and axillary veins in her arms remaining from the 1975 hospitalization at Watts Hospital.

4. On and after 15 September 1975, defendant Davis and Durham County Hospital Corporation were negligent in failing to insert, maintain and remove the various intravenous catheters which had been placed in plaintiff's right arm. Plaintiff James Roberts, husband of plaintiff Rose T. Roberts, was damaged by way of loss of consortium, services, society, companionship, sexual gratification and affection, as a result of the pain and mental anguish which plaintiff Rose T. Roberts had during the approximate twenty-seven months from 6 October 1975 until the catheters were removed in January of 1978.

Based upon these factual allegations in the complaint and on the face of the record, Judge Herring granted both defendants' motions for dismissal under Rule 12(b)(6), N.C. Rules Civ. Proc., for the reason that the statute of limitations had, as a matter of law, barred the claim at the time it was filed on 20 November 1980. From said ruling, plaintiffs appealed to this Court.

*Grover C. McCain, Jr., for the plaintiff-appellants.*

*Young, Moore, Henderson & Alvis by Walter Brock, Jr., for the defendant-appellee James E. Davis.*

*Haywood, Denny & Miller by George W. Miller, Jr., for the defendant-appellee Durham County Hospital.*

MARTIN (Robert M.), Judge.

This case questions the constitutionality of N.C. Gen. Stat. § 1-15(c) which provides for a special limitation period for malpractice actions against professionals. Plaintiffs argue that the statute operates to unconstitutionally deny them a reasonable time in which to file their action; that it is discriminatory, denies equal protection of the laws, and is vague. We affirm the decision of the trial court.

The legislative history of N.C. Gen. Stat. § 1-15 is important to the resolution of this appeal. Prior to 1971 a cause of action for malpractice based on the surgeon's negligence in leaving a foreign object in the body at the conclusion of an operation, accrued immediately upon the closing of the incision, and such action could not be maintained more than three years thereafter even though the consequential damage from such negligence was not discovered until sometime after the operation. *Shearin v. Lloyd,* 246 N.C. 363, 98 S.E. 2d 508 (1957).

Between 1971 and 1 January 1977, plaintiff's cause of action would have been controlled by N.C. Gen. Stat. § 1-15(b) which provided that in professional malpractice claims, the cause of action accrued at the "time the injury was discovered by the claimant, or ought reasonably to have been discovered by him . . .; provided that in such cases the period shall not exceed 10 years from the last act of the defendant giving rise to the claim for relief." Thus between 1971 and 1977 a plaintiff had three years from the date of discovery to bring suit, with an outside time limit of ten years.

Effective 1 January 1977, N.C. Gen. Stat. § 1-15 again was amended to provide:

(c) Except where otherwise provided by statute a cause of action for malpractice arising out of the performance of or

failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action: Provided further, that where damages are sought by reason of a foreign object, which has no therapeutic or diagnostic purpose or effect, having been left in the body, a person seeking damages for malpractice may commence an action therefor within one year after discovery thereof as hereinabove provided, but in no event may the action be commenced more than 10 years from the last act of the defendant giving rise to the cause of action.

Based on N.C. Gen. Stat. § 1-15(c), the trial court dismissed plaintiffs' action because they filed it greater than one year after the discovery of the catheter in Mrs. Roberts' arm.

[1]  Plaintiffs argue that because N.C. Gen. Stat. § 1-15(b) was in effect at the time of the last act of defendants, that N.C. Gen. Stat. § 1-15(c) should not operate retroactively to bar their claim. As applied in this case, N.C. Gen. Stat. § 1-15(c) does not operate retroactively to affect an accrued cause of action. The general rule applicable in such cases was stated in *Flippin v. Jarrell,* 301 N.C. 108, 113, 270 S.E. 2d 482, 486 (1980):

It is well established that the legislature may, without affecting vested interests, shorten or extend a pre-existing period of limitation. [Citations omitted] If the new statute shortens the period, however, it must, to comport with due process, provide a reasonable time for filing actions *which have ac-*

*crued* but which have not been filed when the new statute takes effect. [Citations omitted] [emphasis added]

The statute in question does not operate retrospectively on an accrued cause of action in this case because plaintiffs' claim did not *accrue* prior to the effective date of N.C. Gen. Stat. § 1-15(c). In 1975 at the time of the alleged negligent acts by defendants, N.C. Gen. Stat. § 1-15(b) provided that a cause of action for medical malpractice accrued when the claimant discovered or reasonably should have discovered the latent injury. Plaintiffs discovered the injury for the purposes of this appeal on 9 January 1978. Thus at the time plaintiffs' action accrued, N.C. Gen. Stat. § 1-15(c) was in effect and properly limited plaintiffs' time in which to file suit to one year from date of discovery. Thus plaintiffs' argument is without merit and is overruled.

[2]  In their remaining arguments, plaintiffs attack the constitutionality of N.C. Gen. Stat. § 1-15(c). They initially argue that the statute is unconstitutionally vague because it fails to define "malpractice" or "professional services." Plaintiffs assert that it is difficult to determine whether certain occupations fall within the statute so as to be entitled to assert the limitation period within N.C. Gen. Stat. § 1-15(c). A similar challenge was rejected in *Horn v. Burns and Roe*, 536 F. 2d 251 (8th Cir. 1976). *Horn* considered Nebraska's statute of limitations for actions based upon professional negligence, which is similar to our statute and uses the term "professional services." That court quoted with approval *Big Eagle v. Andera*, 508 F. 2d 1293, 1297 (8th Cir. 1975), which reasoned:

> The potential vagueness of a statute as applied in hypothetical cases is no ground for holding the statute unconstitutional. A defendant cannot claim that a statute is unconstitutional in some of its reaches if it is constitutional as applied to him.

*See also Broadrick v. Oklahoma*, 413 U.S. 601, 37 L.Ed. 2d 830, 93 S.Ct. 2908 (1973).

Even if the statute may be vague as to certain classes of occupations, it is not vague as to these defendants, a doctor and a hospital. Where a term such as "malpractice" or "professional service" has been used over such a lengthy period of time that its usage has given the term well-defined contours such a term will

not be found inadequate. *See In re Willis,* 288 N.C. 1, 11, 215 S.E. 2d 771, 777, *appeal dismissed,* 423 U.S. 976, 46 L.Ed. 2d 300, 96 S.Ct. 389 (1975). In the same act which created N.C. Gen. Stat. § 1-15(c), the legislature defined those persons contemplated to fall within the scope of medical malpractice actions. N.C. Gen. Stat. Chapter 90, Article 1B, "Medical Malpractice Actions" defines "health care provider" in § 90-21.11:

> As used in this Article, the term "health care provider" means without limitation any person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, . . . or a hospital as defined by G.S. 131-126.1(3); . . . or any other person acting at the direction or under the supervision of any of the foregoing persons, hospital or nursing home.

N.C. Gen. Stat. § 90-21.12 contemplates that a medical malpractice action involves "any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care. . . ." The statute is not vague as applied to these defendants. Thus plaintiffs' argument is without merit and is overruled.

Plaintiffs contend that N.C. Gen. Stat. § 1-15(c) violates the federal constitutional guarantees of equal protection and the North Carolina Constitution's equal protection provision prohibiting exclusive emoluments contained in Article I § 32. It is fundamental that a person seeking to raise the question as to the validity of an allegedly discriminatory statute has no standing for that purpose unless he belongs to the class allegedly prejudiced by the statute. *In Re Appeal of Martin,* 286 N.C. 66, 209 S.E. 2d 766 (1974). As stated in *State v. Trantham,* 230 N.C. 641, 644, 55 S.E. 2d 198, 200-01 (1949):

> When the class which includes the party complaining is in no manner prejudiced, it is immaterial whether a law discriminates against other classes or denies to other persons equal protection of the law. 11 A.J. 757. He who seeks to raise the question as to the validity of a discriminatory

Roberts v. Durham County Hospital Corp.

statute has no standing for that purpose unless he belongs to the class which is discriminated against.

The discrimination of which plaintiffs complain concerns alleged discrimination against other occupations who are not encompassed within the class defined in N.C. Gen. Stat. § 1-15(c). Plaintiffs are not aggrieved by the allegedly discriminatory nature of the statute and have no standing to challenge its validity.

Assuming that plaintiffs had standing to attack N.C. Gen. Stat. § 1-15(c), the statute is not unconstitutionally discriminatory. In examining an equal protection question it is necessary to determine the nature of the interest which is allegedly subjected to discriminatory treatment. It is the nature of the interest at stake which determines the applicable equal protection test. Strict judicial scrutiny of legislative classifications is required only when the classifications impinge impermissibly upon the exercise of fundamental rights or operate to the peculiar disadvantage of a suspect class of people. *San Antonio School District v. Rodriguez,* 411 U.S. 1, 36 L.Ed. 2d 16, 93 S.Ct. 1278 (1973). Otherwise, in North Carolina a "lower tier" analysis or "rational basis" test is utilized. *McGowan v. Maryland,* 366 U.S. 420, 425-26, 6 L.Ed. 2d 393, 399, 81 S.Ct. 1101, 1105 (1961) enunciates the rational basis test:

> The constitutional safeguard (of equal protection) is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any statement of facts reasonably may be conceived to justify it.

See *Church v. State,* 40 N.C. App. 429, 447-48, 253 S.E. 2d 473, 484 (1979), *aff'd* 299 N.C. 399, 263 S.E. 2d 726 (1980).

Non-professionals do not constitute a suspect class. In *Hohn v. Slate,* 48 N.C. App. 624, 626, 269 S.E. 2d 307, 308 (1980), *disc. rev. denied,* 301 N.C. 720, 274 S.E. 2d 229 (1981), our Court determined that:

> Persons with malpractice claims are not a suspect class and a classification so as to shorten the statute of limitations as to

them does not affect a fundamental interest. This classification is not inherently suspect.

Thus because neither nonprofessionals nor persons with malpractice claims belong to a suspect class, we are applying a rational basis test.

In the present case we are dealing with alleged medical malpractice on the part of a physician and a hospital. We are thus applying the rational basis test to N.C. Gen. Stat. § 1-15(c) in terms of medical malpractice. It is generally agreed that in the early 1970's what has been termed a medical malpractice insurance crisis existed in most jurisdictions in this country. The crisis resulted from the increasing reluctance of insurance companies to write medical malpractice insurance policies and the dramatic rise in premiums demanded by those companies which continued to issue policies. The difficulty in obtaining insurance at reasonable rates forced many health-care providers to curtail or cease to render their services. The legislative response to this crisis sought to reduce the cost of medical malpractice insurance and to insure its continued availability to the providers of health care. By October 1975, 39 states had commissioned studies of the medical malpractice problem and 22 states had revised civil practice laws and rules in an attempt to remedy the problem. Redish, Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications, 55 Tex. L. Rev. 759, 761 n. 14 (1977); see generally, American Bar Association, Report of the Commission on Medical Professional Liability (1977).

In North Carolina, the Report of the North Carolina Professional Liability Insurance Study Commission (1976), analyzed the malpractice crisis in this state. The commission found that nationwide the number of malpractice suits increased by 70% from 1973 to 1974 and that this malpractice dilemma began to surface in North Carolina in 1974. The St. Paul Fire and Marine Insurance Company, which at that time insured over 90% of the physicians and surgeons practicing in this state as well as 75 hospitals, requested an 82.03% increase in its malpractice rates and threatened to withdraw from the state if the increase was not granted. Shortly thereafter, St. Paul requested another premium rate increase and a change in policy form from "occurrence" to "claims-made" and in September 1975 decided to cease offering coverage

in North Carolina. After much negotiation a compromise was reached between the Commissioner of Insurance and St. Paul, so they again began offering coverage in North Carolina. *Id.* at 4-16. The bulk of the rate increases by St. Paul was for reserves for claims that were "incurred but not reported." *Id.* at 7 Reports of curtailments in health care services by some doctors and a few hospitals in the state were received by the Study Commission as it began to explore ways to increase the availability of insurance. *Id.* at 12. The Study Commission recommended lowering the outside time limit to four years for actions based on professional malpractice, including the foreign object cases. During the four year period, it advised allowing only one year from the date of discovery in which to bring an action. *Id.* at 28. The legislature responded by enacting N.C. Gen. Stat. § 1-15(c).

The legislative purpose to be served by this statute as it relates to these defendants is clear. This statute was passed by the General Assembly in an attempt to preserve medical treatment and control malpractice insurance costs, both of which were threatened by the increasing number of malpractice claims. Many other states have passed similar legislation concerning health care providers, and we find no case striking down such a statute. *See e.g. Sellers v. Edwards,* 289 Ala. 2, 265 So. 2d 438 (1972); *Landgraff v. Wagner,* 26 Ariz. App. 49, 546 P. 2d 26 (1976); *McCarty v. Goldstein,* 151 Colo. 154, 376 P. 2d 691 (1962); *Hamby v. Neurological Associates, P.C.,* 243 Ga. 698, 256 S.E. 2d 378 (1979) (per curiam); *Anderson v. Wagner,* 79 Ill. 2d 295, 402 N.E. 2d 560 (1979); *Carmichael v. Silbert,* --- Ind. App. ---, 422 N.E. 2d 1330 (1981); *Stephens v. Snyder Clinic Association,* 230 Kan. 115, 631 P. 2d 222 (1981). This statute as applied in this case does not violate the equal protection clause of the federal constitution or the exclusion emoluments provision in the State constitution because it is rationally related to maintaining sufficient medical treatment in this State.

For the foregoing reasons the trial court properly dismissed plaintiffs' cause of action.

Affirmed.

Judges MARTIN (Harry C.) and ARNOLD concur.