PATRICIA LACKEY v. BERNARD BRESSLER, M.D., WILLIAM H. BEUTE, M.D., DUKE UNIVERSITY MEDICAL CENTER, DUKE UNIVERSITY, JOHN DOE, MARY ROE, DOE MEDICAL CENTER, SMITHKLINE COR- PORATION AND MacNEILAB, INC.

No. 8622SC1164

(Filed 4 August 1987)

**1. Limitation of Actions § 4.2; Physicians, Surgeons and Allied Professions § 13 — medical malpractice claim — barred by G.S. 1-15(c)**

The trial court properly granted summary judgment in an action for medical malpractice, breach of contract and assault and battery based on the running of the statute of limitations where a review of plaintiff's complaint, answers to interrogatories, and admissions established that the last act by defendant Bressler giving rise to the three causes of action occurred in or about June of 1972, the last act by defendants Duke University Medical Center and Duke University occurred on 1 May 1979, and plaintiff instituted the suit on 17 April 1984. The Legislature passed N.C.G.S. § 1-15(c) specifically to ad- dress the question of when an action for medical malpractice would be barred by time; the breach of contract claim was governed by N.C.G.S. § 1-15(c) because N.C.G.S. § 1-52(16), governing civil actions arising out of personal in- jury, specifically states that a cause of action for personal injury attributable to professional malpractice is governed by N.C.G.S. § 1-15(c); North Carolina does not recognize breach of contract as a legal theory under which one can recover for negligent malpractice; and the assault and battery claim was in fact a negligent malpractice claim because plaintiff alleged a failure to obtain informed consent rather than an unauthorized procedure.

**2. Fraud § 12; Physicians, Surgeons and Allied Professions § 16.1 — fraudulent concealment by hospital — insufficient evidence**

The trial court properly granted summary judgment on plaintiff's claim for fraudulent concealment arising from professional malpractice against Duke University Medical Center and Duke University where plaintiff alleged that defendants deliberately concealed from her that she had developed Tardive Dyskinesia as a result of their negligence in order to prevent her from bring- ing a malpractice suit against the hospital, a claim implying actual or construc- tive fraud. While plaintiff sufficiently alleged a fiduciary relationship arising from the physician-patient relationship, her treatment by numerous other physicians and medical facilities constituted the seeking of independent advice and prevented plaintiff from contending that she relied solely upon Duke University Medical Center to inform her of her condition and its causation, and rebutted the presumption of reliance and intentional deceit arising out of the fiduciary relationship. Plaintiff was therefore required to present a forecast of evidence sufficient to support a claim for constructive fraud or actual fraud and was unable to do so.

APPEAL by plaintiff from *Cornelius, Judge,* and *Mills, Judge.* Orders entered 16 October 1985 and 6 June 1986 in Superior

Court, IREDELL County. Heard in the Court of Appeals 5 May 1987.

Plaintiff brought suit against defendants Bernard Bressler, M.D., Duke University Medical Center, and Duke University for medical malpractice, breach of contract, and assault and battery. As part of the same action, plaintiff also sued defendants Duke University Medical Center and Duke University for fraudulent concealment. All of the above claims arose out of a course of medical treatment received by plaintiff while she was a patient of defendants Duke University Medical Center and Dr. Bressler.

The three defendants made motions for summary judgment as to all of plaintiff's claims, which the trial court granted after finding all claims barred by the applicable statutes of limitations. From summary judgment, plaintiff appeals. We find, after reviewing the evidence, that the trial court's actions were proper.

*Avery, Crosswhite & Whittenton, by William E. Crosswhite, attorney for plaintiff appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert M. Clay and David H. Batten, attorneys for defendant appellees, Bernard Bressler, M.D., Duke University and Duke University Medical Center.*

ORR, Judge.

In support of her claims against defendants, plaintiff's complaint made the following allegations.

From 1969 to 1 May 1979, plaintiff sought and received medical treatment for a neurological condition and psychiatric difficulties from Duke University Medical Center. As part of this treatment in May 1971, Dr. Bressler, a psychiatrist with the psychiatric unit of Duke Medical Center, placed plaintiff on a drug regimen, which included the neurological drugs Haldol and Thorazine. Plaintiff continued to take the two drugs until 17 April 1974, when she was admitted to Broughton Hospital for treatment of a claimed overdose of Thorazine. On 17 April 1974, she permanently stopped taking either Thorazine or Haldol.

The complaint alleged that while taking these two drugs plaintiff developed an irreversible neurological condition known

as Tardive Dyskinesia (TD), and that this condition was directly and proximately caused by defendants' negligence. This negligence allegedly consisted of improperly prescribing Haldol and Thorazine for plaintiff's use, failing to properly monitor the effects of these drugs on plaintiff's condition, and continuing to treat plaintiff with these drugs for an extended period of time. In addition, plaintiff alleged that defendants failed to inform either plaintiff or her family that the use of Haldol or Thorazine could have serious side effects, including the development of TD.

Plaintiff's amended complaint further alleged that defendants Duke University Medical Center and Duke University committed fraudulent concealment in order to prevent her from bringing a malpractice action by intentionally failing to inform plaintiff both that she had TD and that she had developed TD as a result of defendants' negligence.

I.

[1]   The first issue on appeal is whether the trial court properly granted summary judgment for defendants on the issues of malpractice, assault and battery, and breach of contract. Defendants contend that each of these claims was barred by the applicable statute of limitations, and we agree.

Defendants may meet the burden of proof required for obtaining summary judgment by showing that the plaintiff "cannot surmount an affirmative defense which would bar the claim." *Bernick v. Jurden*, 306 N.C. 435, 441, 293 S.E. 2d 405, 409 (1982); *Dickens v. Puryear*, 302 N.C. 437, 276 S.E. 2d 325 (1981). The statute of limitations, if properly pled and if all the facts with reference thereto are admitted or established, may act as an affirmative defense, barring plaintiff's claims and entitling defendants to summary judgment as a matter of law. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E. 2d 350 (1985); *Brantley v. Dunstan*, 10 N.C. App. 706, 179 S.E. 2d 878 (1971); N.C.G.S. § 1A-1, Rule 56 (1983).

A review of the evidence discloses that plaintiff's claims of malpractice, breach of contract, and assault and battery are governed by the statute of limitations contained in N.C.G.S. § 1-15(c), which states in part:

Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided that whenever there is bodily injury to the person, economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. *Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action* . . . . (Emphasis added.)

The Supreme Court addressed the application of this statute in *Black v. Littlejohn*, 312 N.C. 626, 325 S.E. 2d 469 (1985) and concluded that:

[t]he legislature's adoption of an outer limit or repose of four years from the last act of the defendant giving rise to the cause of action for non-apparent injuries contained in G.S. 1-15(c) . . . clearly [has] the effect of granting the defendant an immunity to actions for malpractice after the applicable period of time has elapsed.

312 N.C. at 633, 325 S.E. 2d at 475. "This outer limit is more precisely referred to as a period of repose. . . . Unlike an ordinary statute of limitations which begins running upon accrual of the claim . . . the period contained in the statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." *Id.* at 632-33, 325 S.E. 2d at 474-75 (citations omitted). In addition, our Court has held that the trial court has no discretion in determining whether a claim is barred by the statute of limitations. *Congleton v. City of Asheboro*, 8 N.C. App. 571, 174 S.E. 2d 870 (1970).

A review of plaintiff's complaint, answers to interrogatories, and admissions establishes that the last act taken by defendant Dr. Bressler, giving rise to the three causes of action, occurred in or about June 1972. Although plaintiff contends Dr. Bressler is responsible for the entire period during which she took the drugs, she has presented no evidence in support of her contention. At most the record shows that Dr. Bressler prescribed for plaintiff's use a one-year dosage of Haldol and Thorazine in June 1971. How plaintiff obtained additional refills of Dr. Bressler's original prescription is unclear. It is clear, however, that Dr. Bressler did not see or treat plaintiff again after her discharge from the Duke Medical Center psychiatric unit on 30 June 1971. Without some evidence from plaintiff showing Dr. Bressler's involvement in the refill of her later prescriptions, we cannot hold him responsible for these actions.

The documents further show that the last act taken by defendants Duke University Medical Center and Duke University, giving rise to the three causes of action, occurred on 1 May 1979, when Duke University Medical Center last treated plaintiff as an outpatient.

Plaintiff instituted this suit against defendants, for the claims arising out of these actions on 17 April 1984, approximately twelve years after defendant Dr. Bressler's last act, and four years, eleven months, seventeen days after defendant Duke University Medical Center's last act. Consequently, any claim of plaintiff's, arising out of defendants' actions and governed by N.C.G.S. § 1-15(c), would be barred by the running of the statute.

A. Negligent Malpractice Claim.

The legislature passed N.C.G.S. § 1-15(c) specifically to address the question of when an action for medical malpractice would be barred by time. *Roberts v. Durham County Hospital Corp.*, 56 N.C. App. 533, 289 S.E. 2d 875 (1982), *aff'd*, 307 N.C. 465, 298 S.E. 2d 384 (1983). We conclude, therefore, that N.C.G.S. § 1-15(c) governed the time limitation on plaintiff's claim for negligent malpractice, and that the trial court properly granted summary judgment as to this claim.

B. Breach of Contract Claim.

We next consider plaintiff's claim for breach of contract. Plaintiff contended that defendants had made an implied contract

with plaintiff to provide her with a standard of health care which was as high as that provided by the medical profession in the Durham metropolitan area. She further alleged that defendants' negligent acts, resulting in personal injury to plaintiff, breached this implied contract.

N.C.G.S. § 1-52(16) governs the statute of limitations for all civil actions arising out of personal injury. N.C.G.S. § 1-52(16) specifically states that a cause of action for personal injury, attributed to malpractice arising out of the performance of or failure to perform professional services, is governed by N.C.G.S. § 1-15(c). As discussed earlier in this opinion, plaintiff did not file her complaint within the N.C.G.S. § 1-15(c) statutory period. Accordingly, this cause of action was barred by the statute of limitations.

Moreover, we note that North Carolina does not recognize breach of contract as a legal theory under which one can recover for negligent malpractice.

C. Assault and Battery Claim.

Plaintiff's third claim, for assault and battery, alleged that defendants failed to properly inform either plaintiff or her family of the risks inherent in both the use and continued use of neuroleptic drugs when obtaining consent from these parties for this type of treatment. Plaintiff asserts that defendants' failure to obtain *informed consent* vitiates any express or implied consent to such treatment. Consequently, all actions taken by defendants in prescribing and administering these drugs were performed without authority, and, therefore, constituted an assault and battery on plaintiff's person.

Plaintiff's contention is erroneous.

Where a medical procedure is completely unauthorized, it constitutes an assault and battery, i.e., trespass to the person. . . . If, however, the procedure is authorized, but the patient claims a failure to disclose the risks involved, the cause of action is bottomed on negligence. Defendants' failure to make a proper disclosure is in the nature of malpractice (negligence) and the three-year statute of limitations applies.

*Nelson v. Patrick,* 58 N.C. App. 546, 550, 293 S.E. 2d 829, 832 (1982) (citations omitted); N.C.G.S. §§ 1-15(c) and 1-52(16) (1983). *See Starnes v. Taylor,* 272 N.C. 386, 158 S.E. 2d 339 (1968).

For this reason, we conclude that this claim was also barred by the N.C.G.S. § 1-15(c) time limitation, and that the trial court properly granted defendants' motion for summary judgment.

## II.

[2] The next issue on appeal is whether the trial court properly granted summary judgment, dismissing plaintiff's claim of fraudulent concealment against Duke University Medical Center and Duke University. Plaintiff's complaint alleged that defendants deliberately concealed from her the fact that she had developed TD as a result of their negligence in order to prevent her from bringing a malpractice suit against the hospital. This claim implies recovery under either a theory of actual fraud or constructive fraud.

The Supreme Court discussed extensively the law governing the charges of constructive fraud and actual fraud in *Watts v. Cumberland County Hosp. System,* 317 N.C. 110, 343 S.E. 2d 879 (1986).

In *Watts,* as in the present case, the plaintiff alleged that defendants fraudulently concealed material facts concerning plaintiff's injuries to prevent plaintiff from bringing an action for an alleged prior malpractice against defendants.

Justice Martin, speaking for the Supreme Court in *Watts,* stated the law and elements of constructive fraud as follows:

Constructive fraud arises where a confidential or fiduciary relationship exists, and its proof is less 'exacting' than that required for actual fraud. . . . When a fiduciary relation exists between parties to a transaction, equity raises a presumption of fraud when the superior party obtains a possible benefit. . . . 'This presumption arises not so much because [the fiduciary] has committed a fraud, but [because] he may have done so.' . . . The superior party may rebut the presumption by showing, for example, 'that the confidence reposed in him was not abused, but that the other party acted on independent advice.' . . . Once rebutted, the pre-

sumption evaporates, and the accusing party must shoulder the burden of producing actual evidence of fraud.

In stating a cause of action for constructive fraud, the plaintiff must allege facts and circumstances '(1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'

*Watts*, 317 N.C. at 115-16, 343 S.E. 2d at 884 (citation omitted).

To establish the two elements of constructive fraud, plaintiff first alleged she had been a patient of Duke University Medical Center. In support of this allegation, the hospital's medical records showed that plaintiff was treated by Duke University Medical Center, after receiving her prescription for Haldol and Thorazine in June 1971, on 20 September 1977, 3 January 1978, 7 February 1978, 22 through 28 February 1978, and approximately ten times between 11 April 1978 through 1 May 1979. Since it is recognized that the relationship of patient and physician is a fiduciary one, "imposing upon the physician the duty of good faith and fair dealing," this allegation was sufficient to establish the first element of the charge. *Black v. Littlejohn*, 312 N.C. at 646, 325 S.E. 2d at 482; *Watts v. Cumberland County Hosp. System*, 317 N.C. 110, 343 S.E. 2d 879.

Next, plaintiff alleged she was harmed by her fiduciary relationship with the hospital, when the hospital concealed from her the fact that its doctors had negligently treated her with drugs, causing her irreparable physical harm. Plaintiff further alleged the hospital's concealment benefitted it by allowing the statute of limitations to run on plaintiff's action for medical malpractice against the hospital based upon the actions of its doctors.

Unrefuted, plaintiff's second set of allegations, as set forth in her affidavits and other records considered by the trial court, are sufficient to establish the second element of the charge of constructive fraud, giving plaintiff the ability to withstand a motion for summary judgment. *Watts v. Cumberland County Hosp. System*, 317 N.C. 110, 343 S.E. 2d 879.

There was, however, additional evidence presented to the trial court pertaining to this charge. Plaintiff's answers to defend-

ants' interrogatories disclosed that plaintiff had sought additional medical help for her condition, during the time period she was allegedly Duke University's Medical Center's patient, from the following: Iredell Memorial Hospital and staff Drs. George Eckley or James Rhyne on 15 April 1974, 13 December 1977, 22 through 26 May 1979, 11 June 1979, and 13 through 15 August 1982; Broughton Hospital and staff Drs. James Mattox or Michael Knoelke on 17 April 1974 and 12 June through 19 July 1979; and Iredell County Mental Health Clinic approximately 89 times between 1979 and 1982 for therapy and treatment by medical personnel.

The Supreme Court also addressed the effect of independent medical treatment upon a claim for constructive fraud arising out of the alleged concealment of medical malpractice in *Watts* stating:

> Evidence put forward . . . amply demonstrates that plaintiff sought and received a number of second opinions as to the source of her complaints. Even if a presumption of fraud arises from the alleged benefit to defendants of buttressing their medical reputations, the history of plaintiff's seeking and acquiring numerous second opinions from several other specialists dispels the presumption of reliance and intentional deceit that arises from the fiduciary relation itself.

*Watts*, 317 N.C. at 116, 343 S.E. 2d at 884. Based upon the holding in *Watts*, this Court concludes that plaintiff's treatment by numerous other physicians and medical facilities constituted the seeking of independent advice and prevented plaintiff from contending that she relied solely upon Duke University Medical Center to inform her of her condition and its causation. Accordingly, we find that the above evidence rebutted the presumption of reliance and intentional deceit arising out of the fiduciary relationship. As a result, plaintiff was required to present a forecast of evidence sufficient to support a claim for constructive fraud. Plaintiff failed in this respect.

Unable to rely on a claim of constructive fraud, plaintiff must allege facts supporting actual fraud to survive summary judgment on this issue.

Lackey v. Bressler

The five essential elements of actual fraud are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E. 2d 674, 677 (1981) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E. 2d 494, 500 (1974) ); *Watts v. Cumberland County Hosp. System*, 317 N.C. 110, 343 S.E. 2d 879. In addition, N.C.G.S. § 1A-1, Rule 9(b) requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." This requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation, and what was obtained as a result of the fraudulent acts or representations. *Terry v. Terry*, 302 N.C. 77, 273 S.E. 2d 674. *See also* N.C.G.S. § 1A-1, Rule 9(f) (1983).

To meet the requirements stated above, plaintiff's forecast of evidence in the present case must show that named medical personnel, employed by Duke University Medical Center, deliberately concealed information from her, intending to and succeeding in, deceiving her as to her condition and its causation, and causing her to lose her claim against defendants for negligent malpractice. *Watts v. Cumberland County Hosp. System*, 317 N.C. 110, 343 S.E. 2d 879.

After reviewing the documents submitted by plaintiff in opposition to the motion, we find that her forecast of evidence was insufficient to withstand a motion for summary judgment on either theory of fraud as to defendants Duke University and Duke University Medical Center.

We conclude, therefore, that plaintiff's claims of malpractice, breach of contract, and assault and battery were barred by N.C.G.S. § 1-15(c), and that the trial court properly granted defendants', Dr. Bressler, Duke University Medical Center, and Duke University, motion for summary judgment on these claims. We further hold that plaintiff's forecast of evidence was insufficient to support a claim for fraudulent concealment on the part of defendants Duke University Medical Center and Duke University, and that summary judgment was also properly granted on this claim.

No error.

Judges ARNOLD and WELLS concur.