VONDA C. TREXLER, Plaintiff v. DAVID C. POLLOCK, M.D., HUGH CHATHAM MEMORIAL HOSPITAL, INC., COASTAL EMERGENCY SERVICES, INC., COASTAL EMERGENCY GROUP, INC., COASTAL EMERGENCY PHYSICIANS, P.A., COASTAL EMERGENCY SERVICES MANAGEMENT GROUP, INC., COASTAL EMERGENCY SERVICES OF THE MID-ATLANTIC, INC., C.H.G. PROPERTIES, INC., Defendants

No. COA98-1629

(Filed 16 November 1999)

1. Statute of Limitations— medical malpractice—continuing course of treatment—prescription

The trial court correctly dismissed a medical malpractice action as barred by the statute of limitations where plaintiff checked into an emergency room, Dr. Pollock gave her a prescription lasting several days to control nausea, plaintiff did not see Dr. Pollock again, and another physician subsequently diagnosed plaintiff as suffering from a ruptured appendix. Although plaintiff argued that Dr. Pollock's initial act of negligence continued throughout her consumption of the medicine, she saw Dr.

Pollock only one time, her cause of action is based upon the alleged failure to properly diagnose her illness, and the medicine was not the cause of her illness. The doctrine of continuing course of treatment is not extended to cover the time during which a patient consumes prescription medication, absent a showing of an ongoing relationship with the doctor and further treatment by the same doctor, or evidence that the medication itself was the cause of the patient's injury.

**2. Statute of Limitations— hospitals—continuing course of treatment—not applicable**

The continuing course of treatment doctrine did not apply to extend the statute of limitations in a medical malpractice claim against a hospital based upon two discrete visits to an emergency room where plaintiff was not under the continuing care and observation of any hospital employee.

Appeal by Plaintiff from judgment entered 8 October 1998 by Judge Julius A. Rousseau, Jr. in Superior Court, Wilkes County. Heard in the Court of Appeals 23 September 1999.

*Randolph M. James, P.C. by Randolph M. James for plaintiff.*

*Bennett & Guthrie, P.L.L.C. by Richard V. Bennett and Stanley P. Dean for defendant Hugh Chatham Memorial Hospital and Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P. by Samuel G. Thompson, Deanna L. Davis, and Michael R. Gordon for defendants David C. Pollock, M.D., Coastal Emergency Services, Inc., Coastal Emergency Group, Inc., Coastal Emergency Physicians, P.A., Coastal Emergency Services of the Mid-Atlantic, Inc. and C.H.G. Properties, Inc.*

WYNN, Judge.

[1] The continuing course of treatment doctrine tolls the statute of limitations for a medical malpractice claim upon the last act of a defendant physician. The plaintiff urges us to hold that a prescription medication, absent any other contact with a doctor, constitutes a continuing course of treatment and thereby extends the statute of limitations period. Since the drug prescription was neither continuous nor evidence of subsequent treatment by a physician, we affirm the trial court's dismissal of the case as time barred by the applicable statute of limitations.

**TREXLER v. POLLOCK**

[135 N.C. App. 601 (1999)]

On the night of 6-7 May 1995, Vonda C. Trexler checked into the emergency room of Hugh Chatham Memorial Hospital complaining of stomach cramps, lower back pain, poor appetite, weakness, chills, and vomiting. Dr. David Pollock examined Ms. Trexler and immediately gave her Phenergan to treat the nausea and Demerol to treat the abdominal pain. He also gave her a several day prescription for Phenergan. Although Ms. Trexler had been to Hugh Chatham Memorial Hospital before this event, she had never seen Dr. Pollock. Ms. Trexler's condition improved and she left the hospital that night at approximately 1:00 a.m. She took the prescribed medication for the next several days; however, she did not see Dr. Pollock again.

Ms. Trexler returned to Hugh Chatham Memorial on 17 May 1995, presenting symptoms similar to those that she presented on her earlier visit to the hospital. This time another physician correctly diagnosed that she suffered from a ruptured appendix. Apparently, the medicine that Dr. Pollock prescribed may have suppressed the symptoms of the appendicitis.

On 18 May 1998, Ms. Trexler brought a medical malpractice action against Dr. Pollock, Hugh Chatham Memorial, and the institutions which supplied the hospital with its emergency services and physicians (the "Coastal Entities"). On 28 July, Ms. Trexler filed her First Amended Complaint, in which she first asserted that the medication prescribed by Dr. Pollock constituted a continuing course of treatment. In response, the defendants moved to dismiss her action under N.C.R. Civ. P. 12(b)(6) (1990) on the grounds that the action was time barred by the applicable statute of limitations. On 28 September, the trial court dismissed Ms. Trexler's action as time barred. She appealed to this Court.

Did Dr. Pollock's prescription constitute a continuing course of treatment thereby extending the time within which Ms. Trexler could file her medical malpractice claim? We answer: No.

N.C. Gen. Stat. § 1-52(5) (Cum. Supp. 1998) provides a three-year statute of limitations for filing negligence actions. Under N.C. Gen. Stat. § 1-15(c) (1996) the period of limitation for malpractice actions is,

> deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action . . . .

Ms. Trexler argues that even though the alleged act of negligence occurred on the night of 6-7 May 1995, the statute of limitations was

**TREXLER v. POLLOCK**

[135 N.C. App. 601 (1999)]

tolled until 17 May 1995 under the continuing course of treatment doctrine.[1]

Our courts recognize the continuing course of treatment doctrine to allow a patient to extend the statute of limitations when a series of acts on the part of a doctor add up to negligence. *See Hensell v. Winslow,* 106 N.C. App. 285, 416 S.E.2d 426, *review denied,* 332 N.C. 344, 421 S.E.2d 148 (1992). The doctrine applies to situations in which the doctor continues a particular course of treatment over a period of time.

> The theory is that "so long as the relationship of surgeon and patient continued, the surgeon was guilty of malpractice during that entire relationship for not repairing the damage he had done and, therefore, the cause of action against him arose at the conclusion of his contractual relationship."

*Ballenger v. Crowell,* 38 N.C. App. 50, 58, 247 S.E.2d 287, 293 (1978) (cites omitted).

To benefit from the continuing course of treatment doctrine, a patient must show two things. First, she must show that she had a continuous relationship with her physician. Where there is no ongoing contact between the patient and her doctor, there is no continuous relationship. *See Hensell* at 290, 416 S.E.2d at 430. The absence of any follow-up visits reveals that the patient-physician relationship has ended. *See id.*

Second, a patient must show that she received subsequent treatment from the physician who committed the negligent act. *See Sidney v. Allen,* 114 N.C. App. 138, 441 S.E.2d 561 (1994), *aff'd by,* 341 N.C. 190, 459 S.E.2d 237 (1995). This prong is not met unless the patient sees the same doctor. *See id.*

In the case at hand, Ms. Trexler satisfied neither of the two prongs. She saw Dr. Pollock only one time—on the night of 6-7 May. There is no evidence in the record showing that Dr. Pollock treated Ms. Trexler after the night in question. In fact, upon her return to the hospital on 17 May, she was treated by another doctor.

Ms. Trexler argues that whether she had a continuing relationship with Dr. Pollock should be a question of fact for the jury. She relies on *Goins v. Puleo,* 130 N.C. App. 28, 502 S.E.2d 621 (1998), *rev'd on*

---

1. Since 17 May 1998 was a Sunday, the three-year statute of limitations expired on 18 May 1998. N.C.R. Civ. P. 6(a) (1990).

*other grounds,* 350 N.C. 277, 512 S.E.2d 748 (1999), in which we addressed the issue of whether a series of visits to *two* doctors constituted a continuing course of treatment. However, to present a question to the jury, there must be an issue of fact in dispute. In the case at bar, the parties agree as to the facts—the only question that remains is whether a prescription, standing alone, constitutes a continuing course of treatment. Under the undisputed facts of this case, the trial court properly determined that a drug prescription alone does not constitute a continuing course of treatment.

Moreover, while Ms. Trexler cannot show that she had a continuous relationship with Dr. Pollock, she nevertheless argues that Dr. Pollock's initial act of negligence continued throughout her consumption of the medication. First, she points out that under North Carolina law, a "drug" is an article "intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man . . . ." N.C. Gen. Stat. § 106-121(6)(b) (Cum. Supp. 1998). She further notes that our statutes define "Practitioner" as "a physician . . . permitted to distribute, dispense, conduct research with respect to or administer a drug so long as such activity is within the normal course of professional practice or research." N.C. Gen. Stat. § 106-121(14)(b) (Cum. Supp. 1998). From these two definitions, Ms. Trexler concludes that Dr. Pollock owed her a continuing duty of care throughout the prescription period, and therefore, her prescription medication constituted a continuing course of treatment.

To further support this conclusion, she relies on *Kraus v. Cleveland Clinic,* 442 F. Supp. 310 (N.D. Ohio 1977) wherein a federal district court extended Ohio's continuing course of treatment doctrine to include a patient's prescription medication. However, aside from the fact that we are not bound by that decision, the facts of the *Kraus* case are quite different from the facts of the case at bar. In *Kraus,* the plaintiff had seen her doctor several times, during which he continued to refill her prescription for prednisone. In addition, the drugs she took directly caused the injury which served as the basis for her claim.

In the case at bar, Dr. Pollock was not Ms. Trexler's regular physician—in fact, he only saw her once. Moreover, Ms. Trexler's medicine was not the cause of her illness. While it is true that the inappropriate prescription may have served to mask her symptoms and increase the damage caused by appendicitis, Ms. Trexler's cause of action is based upon Dr. Pollock's failure to properly diagnose her illness. Since

*Kraus* is distinguishable from the case presently before us, we cannot accept *Kraus* as persuasive authority.

Ms. Trexler offers one North Carolina case to support her argument—*Lackey v. Bressler*, 86 N.C. App. 486, 358 S.E.2d 560 (1987). In *Lackey* we said that the last act of a doctor giving rise to a claim for medical malpractice was the expiration of a one-year prescription. However, our holding in that case has limited precedential value as applied to the present case for three reasons. First, the plaintiff in that case brought her medical malpractice suit 12 years after the defendant doctor's prescription ran out. Our statement that his last act of negligence occurred when the prescription ran out had no bearing on whether the statute of limitations had tolled in that case. Notably, we were not deciding whether the continuing course of treatment doctrine should extend to the prescription of medication as a general rule. Second, the plaintiff in that case claimed that her injury was directly caused by the medication prescribed to her. Finally, the physician in *Lackey* had been the patient's longtime physician and therefore the facts more closely fit the two-prong test necessary to invoke the continuing course of treatment doctrine.

[2] Ms. Trexler further argues that her action against Hugh Chatham Memorial and the Coastal Entities is not barred by the statute of limitations because the continuing course of treatment doctrine applies to those institutions. However, we do not agree with her argument.

In *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133, 472 S.E.2d 778 (1996), our Supreme Court held that the continuing course of treatment doctrine applies to institutional medical providers as well as individual physicians. However, unlike the facts of this case, the patient in *Horton* was continuously under the care of the hospital staff. She was admitted to a hospital to repair damage done to her bladder by a catheter, and she remained there from the time of the injury until it was repaired. She was continually under the care and observation of hospital employees. In contrast, in this case, Ms. Trexler went to the hospital for two discrete visits—she was not under the continuing care and observation of any hospital employee.

Finally, we point out that as a matter of policy, to extend the alleged negligence of Dr. Pollock to include Ms. Trexler's second visit to the emergency room would result in a virtually unlimited statute of limitations for medical malpractice claims. If we established such a

TREXLER v. POLLOCK

[135 N.C. App. 601 (1999)]

precedent, a patient could bring a medical malpractice claim long after an initial act of negligence by one doctor, merely by returning to the same hospital for a checkup. Statutes of limitations exist for a reason—to afford security against stale claims.

> With the passage of time, memories fade or fail altogether, witnesses die or move away, evidence is lost or destroyed; and it is for these reasons, and others, that statutes of limitations are inflexible and unyielding and operate without regard to the merits of a cause of action.

*Estrada v. Burnham*, 316 N.C. 318, 327, 341 S.E.2d 538, 544 (1986), *superseded by statute on other grounds as stated in Turner v. Duke Univ.*, 325 N.C. 152, 381 S.E.2d 706 (1989).

In summation, Ms. Trexler failed to show that the continuing course of treatment doctrine should extend to cases such as this—where a one-time doctor prescribes medication which is not the cause of the patient's illness. A ruling in her favor would only serve to create an uncertain and perhaps unlimited statute of limitations.

The statute of limitations for medical malpractice is three years. The continuing course of treatment doctrine tolls the statute of limitations until the last act of the physician which gave rise to the cause of action. We decline to extend this doctrine to cover the time during which a patient consumes prescription medication, absent a showing of an ongoing relationship with the doctor and further treatment by the same doctor, or evidence that the medication itself was the cause of the patient's injury. Since Ms. Trexler's complaint is barred under the applicable statute of limitations, we uphold Judge Rousseau's decision to dismiss her complaint.

Affirmed.

Judges HORTON and EDMUNDS concur.