JAMES E. WHITAKER, PLAINTIFF v. PEGGY H. AKERS, EXECUTRIX OF THE ESTATE OF RICHARD E. AKERS, M.D., AND/OR MEDICAL CENTER UROLOGY, DEFENDANT

No. COA99-561

(Filed 4 April 2000)

**1. Medical Malpractice— continuing course of treatment— physician assistant's prescription refill**

A physician assistant's prescription refill constituted treatment under the continuing course of treatment doctrine since the evidence reveals that the physician coordinated plaintiff patient's continuing treatment and supervised his staff in carrying out treatment. N.C.G.S. § 90-18.1(e).

**2. Statute of Limitations— tolling—medical malpractice— continuing course of treatment**

The trial court did not abuse its discretion in a medical malpractice action by granting a new trial based on errors of law occurring at trial since the trial court failed to give defendant's requested instruction on the statute of limitations issue because the statute of limitations under N.C.G.S. § 1-15(c) stops being tolled under the continuing course of treatment doctrine when plaintiff knew or should have known of his injury.

**3. Appeal and Error— memorandum of additional authority— no argument allowed**

An appellee may not use a memorandum of additional authority as a reply brief or for additional argument because any summary of the authority or further argument is a violation of N.C. R. App. P. 28(g).

Appeal by plaintiff from judgment entered 28 December 1998 by Judge Julius A. Rousseau, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 21 February 2000.

*Fuller, Becton, Slifkin & Bell, by Charles L. Becton and James C. Fuller, and The Johnson Law Office, by Debra I. Johnson, for plaintiff-appellant.*

*Brinkley Walser, PLLC, by Stephen W. Coles, for defendant-appellee.*

EAGLES, Chief Judge.

This is a medical malpractice case arising out of the treatment of plaintiff James Whitaker by the late Dr. Richard E. Akers, a urologist from High Point. The plaintiff substituted Peggy H. Akers, the executrix of Akers' estate, after Dr. Akers' death.

Plaintiff was in his early sixties when he first visited Dr. Akers. On that visit, plaintiff complained of urological problems. These problems included pain and difficulty in urinating, pain in both hips and his testicles, and nocturnia. Dr. Akers treated plaintiff's condition with a surgical procedure known as a transurethral resection of the prostate (TURP). This procedure involves surgically removing a small portion of the prostate gland. After removal, a pathologist analyzed the gland and determined that the plaintiff had two "microscopic foci" of a carcinoma. Defendant claims that there was no way of knowing whether this carcinoma would have spread. However, plaintiff's experts testified that this type of cancer does not spread and is not life threatening to a man of plaintiff's age.

After this discovery, all parties chose to take an aggressive approach toward treatment, specifically the removal of plaintiff's prostate and lymph nodes on 26 June 1991. There is contradictory testimony whether Dr. Akers properly explained to plaintiff all of his options. Plaintiff's experts testified that the surgery was not necessary and that Dr. Akers' surgical techniques were below the standard of care. These experts opined that Dr. Akers removed excessive skeletal muscle tissue while performing the surgery. Muscle tissue helps control continence.

Defendant's experts testified that Dr. Akers' conduct was within the standard of care. Defendant places the choice of surgery on the plaintiff stating that plaintiff decided after Dr. Akers presented him with all of the options and the potential consequences. Additionally, defendant's experts testified that Dr. Akers performed the surgery properly.

After the surgery, plaintiff became incontinent and impotent. He presented evidence that he no longer goes out in public and that he wears diapers because he cannot control his bodily functions. Plaintiff's experts opined that his condition resulted from Dr. Akers' unnecessary and improper surgery. Additionally, plaintiff presented evidence that Dr. Akers treated him approximately seventeen times after the surgery until August of 1992. On 12 August 1992, plaintiff

called Dr. Akers' office and had a conversation with one of Dr. Akers' physician assistants. The physician assistant refilled a prescription for steroidal creams to treat a groin rash allegedly related to plaintiff's incontinence.

At the close of all evidence, the trial court charged the jury and sent them out for deliberations. After approximately five minutes, the jury sent a note to the trial judge stating: "Could you explain how many foremen we should have in deciding upon a verdict? Maybe some of us don't understand." The judge then brought the jury back into the courtroom and instructed them on the foreperson's purpose. Jury deliberations lasted approximately one hour and resulted in a verdict for plaintiff in the amount of one million five-hundred thousand dollars.

After the verdict, defendant moved for a judgment notwithstanding the verdict pursuant to N.C.R. Civ. Pro. 50(b) or in the alternative for a new trial pursuant to N.C.R. Civ. Pro. 50 and 59. The trial court granted the defendant's motions. In its order the court found that

> 7. The undersigned judge was concerned about the statute of limitations issue when it was first raised by the defendant at the close of plaintiff's evidence. The undersigned judge believes that the charge which he gave to the jury on the statute of limitations was not a correct statement of the law.

From these findings the trial court made the following relevant conclusion of law.

> 4. Errors in law occurred at the trial and were objected to by the defendants concerning the statute of limitations and the motion of the defendants filed pursuant to Rule 59(a)(8) of the North Carolina Rules of Civil Procedure for a new trial on that ground should be allowed as a matter of law and in the discretion of the court.

Plaintiff appeals.

A motion for judgment notwithstanding the verdict "is essentially a directed verdict granted after the jury verdict." *In Re Will of Buck*, 130 N.C. App. 408, 410, 503 S.E.2d 126, 129 (1998), *aff'd*, 350 N.C. 621, 516 S.E.2d 858 (1999). A motion for judgment notwithstanding the verdict "is cautiously and sparingly granted." *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 369, 329 S.E.2d 333,

338 (1985). The bar is high for the moving party; the trial court should deny the motion if there is more than a scintilla of evidence to support the plaintiff's prima facie case. *Edwards v. West*, 128 N.C. App. 570, 573, 495 S.E.2d 920, 923, *cert. denied*, 348 N.C. 282, 501 S.E.2d 918 (1998).

In examining a motion for judgment notwithstanding the verdict, the trial court must consider the evidence in the light most favorable to the nonmoving party. *Tomika Investments, Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.*, 136 N.C. App. 493, 524 S.E.2d 591 (2000). The court must give the nonmovant the benefit of every reasonable inference that is legitimately drawn from the evidence and it must resolve all contradictions in the nonmovant's favor. *Id.* On appeal our "standard of review for a judgment notwithstanding the verdict is the same as that for a directed verdict; that is, whether the evidence was sufficient to go to the jury." *Id.* (citation omitted).

Additionally, the granting or denial of a motion for a new trial lies solely within the trial court's discretion which is "practically unlimited." *See Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 603 (1982) (citation omitted). Appellate review is strictly limited to whether the record "affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington*, 305 N.C. at 482, 290 S.E.2d at 602. Absent a manifest abuse of discretion, this Court will not overturn the trial court's ruling granting a new trial.

Defendant argues that the applicable statute of limitations G.S. § 1-15(c) (1999) bars plaintiff's claim and that the continuing course of treatment doctrine does not save it. In her motion for judgment notwithstanding the verdict and new trial defendant claimed that the trial court improperly instructed the jury on the statute of limitations issue. The court gave the following instruction.

The statute of limitations for a medical malpractice suit is normally three years. However, this three-year period is tolled or suspended, that is, the clock stops running on it, if the plaintiff remains under a continuing course of treatment by the defendant for the same injury that is issue—that is at issue in this case. That is to say that as long as plaintiff continues to be under the care of the defendant for the initial injury giving rise to the malpractice claim, no time is elapsing under the statute of limitation. Furthermore, it is not necessary that the treatment rendered subsequent to the initial treatment be negligent.

Now the evidence tends to show that the plaintiff was treated by Dr. Akers for incontinency at least 16 times between June 26, 1991 and August 12, 1992. And further that he saw no other doctor. The burden of proof on this issue is on the plaintiff to satisfy you by the greater weight of the evidence that he continued to be treated by doctor—by the defendant from immediately after his prostate surgery on June 26, 1991, through August 12, 1992, when the treatment was for symptoms that arose from that surgery.

So if you find from the evidence by a greater weight that there was a continuing course of treatment of the plaintiff by the defendant, you must find that the statute of limitations expired on June 12, 1995, and therefore answer this question "yes."

Defendant makes two arguments as to the propriety of the trial court's instructions. First, defendant claims that the prescription given by the physician assistant on 12 August may not constitute a continuing course of treatment.

The continuing course of treatment doctrine operates to toll the statute of limitations. *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133, 137, 472 S.E.2d 778, 781 (1996). The doctrine applies to situations where a doctor continues a particular course of treatment over a period of time. *Ballenger v. Crowell*, 38 N.C. App. 50, 58, 247 S.E.2d 287, 293 (1978) (citations omitted). The underlying theory of the doctrine is that so long as the doctor/patient relationship continues, the doctor is guilty of malpractice during the entire relationship for not repairing the damage he did and therefore, the cause of action arises at the conclusion of the contractual relationship. *Id.*

In order to benefit from the continuing course of treatment doctrine, "a plaintiff must show both a continuous relationship and subsequent treatment from that physician." *Horton*, 344 N.C. at 137, 472 S.E.2d at 781. It is insufficient to show the mere continuity of the physician/patient relationship. *Callahan v. Rogers*, 89 N.C. App. 250, 255, 365 S.E.2d 717, 720 (1988). Rather, the subsequent treatment must be related to the original act, omission or failure to act that gave rise to the original claim. *Horton*, 344 N.C. at 137, 472 S.E.2d at 781. Additionally, it is not necessary that the subsequent treatment be negligent so long as the doctor continued to treat the plaintiff for the particular condition created by the original negligent act. *Rissolo v. Sloop*, 135 N.C. App. 194, 196, 519 S.E.2d 766, 768 (1999).

**[1]** Plaintiff has shown that he had a continuous relationship with Dr. Akers. The doctor not only performed the surgery but also rendered post-operative corrective treatment approximately seventeen times after the surgery. Here, the issue is whether the physician assistant's prescription refill constitutes treatment. Defendant claims that the prescription refill in question cannot constitute a continuing course of treatment because Dr. Akers did not directly participate in the prescription refill. We disagree.

Defendant admits that Dr. Akers wrote the original prescription for the steroidal cream in the spring of 1992. Plaintiff's evidence demonstrated that the prescription was corrective treatment for Dr. Akers' alleged negligent surgery. Accordingly, the refill of the prescription also constituted corrective treatment. At trial, the physician assistant, Michael Kreitz, testified that Dr. Akers "is responsible for my actions" when dealing with patients. We also note that G.S. § 90-18.1(e) (1999) states

> [a]ny prescription written by a physician assistant or order given by a physician assistant for medications, tests, or treatments **shall be deemed to have been authorized by the physician** approved by the Board as the supervisor of the physician assistant and the supervising physician shall be responsible for authorizing the prescription or order.

These facts show that Dr. Akers was responsible for any course of treatment chosen by the physician assistant. The physician assistant did not and cannot act without a physician's supervision. Here, that physician was Dr. Akers. Dr. Akers coordinated plaintiff's treatment and supervised his staff in carrying out that treatment. It would be unjust to allow doctors to escape liability by saying that a prescription refill did not constitute treatment by the doctor simply because the physician assistant handled the phone call. Accordingly, under the facts presented, we now hold that the physician assistant's prescription refill constituted treatment under the continuing course of treatment doctrine.

Defendant claims that the case of *Trexler v. Pollock*, 135 N.C. App. 601, 522 S.E.2d 84 (1999), supports her position. We disagree. In *Trexler*, the plaintiff sued an emergency room doctor for failing to diagnose appendicitis properly. This Court stated that the doctor's prescription did not constitute a continuing course of treatment. *Id.* at 605, 522 S.E.2d at 87-88. There plaintiff saw the physician only one time and never had any further contact with that physician. *Id.* Here,

the evidence shows that plaintiff had a continuous relationship with Dr. Akers and that all of his treatment was given by Dr. Akers or individuals who worked under Dr. Akers' employment and guidance. Therefore, *Trexler* does not control the case at bar.

[2] Next, defendant claims that the trial court correctly granted her motion, because it failed to issue an instruction as to whether the plaintiff knew or should have known of his injury. Under the continuing course of treatment doctrine, the statute of limitations is tolled until the earlier of "(1) the termination of the physician's treatment of the patient, or (2) the time at which the patient knew or should have known of the injury." *Rissolo*, 135 N.C. App. at 196, 519 S.E.2d at 768. It is the second possible termination date that has caused confusion here.

We begin by dealing with plaintiff's arguments. Plaintiff claims that the Supreme Court has disavowed the discovery exception under the continuing course of treatment doctrine. *See Horton*, 344 N.C. at 137, 472 S.E.2d at 781. In *Horton*, our Supreme Court adopted this doctrine for the first time. *Id.* Notably, the *Horton* Court did not discuss any potential termination date for the early discovery of malpractice. *Id.* Plaintiff argues that by limiting its adoption of the doctrine "only as set forth," the *Horton* Court eliminated any exception for the early discovery of malpractice. *Id.* We disagree. While the *Horton* Court only adopted the doctrine "as set forth," it is important to note that the Court expressly declined to rule on other features of the doctrine as developed by this Court. *Id.* Consequently, our Supreme Court has never expressly or implicitly overruled the discovery exception to the continuing course of treatment doctrine. This Court has cited this exception in cases both before and after *Horton*. Accordingly, the potential exception still remains the law in this state and defendant was entitled to an instruction on it.

Next, we consider the precise nature of the instruction to which defendant is entitled. Defendant's arguments seem to suggest that plaintiff may not benefit from the continuing course of treatment doctrine, so long as he knows that he has sustained an injury. However, a careful review of the case law refutes this argument.

Under the continuing course of treatment doctrine, the statute of limitations stops being tolled when the patient discovers not only that he is injured but also the negligent act that caused his injury. *Ballenger*, 38 N.C. App. at 60, 247 S.E.2d at 294. An injury may be readily apparent but the fact of wrong may lay hidden. *Id.* It is only

**WHITAKER v. AKERS**

[137 N.C. App. 274 (2000)]

when the plaintiff knew or should have known that this wrongful act caused his injury that the plaintiff loses the benefit of the continuing course of treatment doctrine. *Id.; see Callahan v. Rogers,* 89 N.C. App. 250, 365 S.E.2d 717 (1988); *see Black v. Littlejohn,* 312 N.C. 626, 646, 325 S.E.2d 469, 483 (1985) (holding that the term "bodily injury" under G.S. § 1-15(c) denotes bodily injury from wrongful conduct in a legal sense). Here, while there is no question that the plaintiff knew he was incontinent and impotent, there is some question whether he knew or should have known that defendant's conduct was wrongful and whether that conduct caused his incontinence and impotence, prior to the running of the statute of limitations. Accordingly, defendant was entitled to her requested jury instruction as modified by this opinion.

In light of the above discussion we now hold that the trial court erred by entering judgment for the defendant and we now reverse that ruling. Plaintiff presented sufficient evidence to send this case to the jury. However, we hold that the trial court did not abuse its discretion in granting a new trial. In its order, the trial court concluded in its discretion that errors of law occurred at trial in regard to the statute of limitations issue and that these errors entitled the defendant to a new trial. As we discussed earlier, we agree with the trial court's assessment as to its failure to give defendant's requested instruction on the statute of limitations issue. Therefore, we discern no abuse of discretion and affirm the trial court's judgment setting aside the verdict and granting a new trial. Accordingly, it is unnecessary to consider the remaining assignments of error.

[3] Lastly, we note that the appellee has submitted a purported "memorandum of additional authority." We caution the bar that it may not use a memorandum of additional authority as a reply brief or for additional argument. N.C.R. App. P. 28(g) (1999). A memorandum of additional authority "shall simply state the issue to which the additional authority applies and provide a full citation of the authority." *Id.* Any summary of the authority or further argument is a violation of Rule 28(g).

Affirmed in part, reversed in part, and remanded for new trial.

Judges McGEE and HORTON concur.