STELLA PINKHAM, WIDOW; LULA CAYTON AND HUSBAND, H. L. CAYTON;
    LELA CONGLETON AND HUSBAND, J. M. CONGLETON; JOHN R. PINK-
    HAM, UNMARRIED; AND JATHER PINKHAM, UNMARRIED, V. THE UNBORN
    CHILDREN OF JATHER PINKHAM, WHO MAY BE LIVING AT THE TIME OF
    HIS DEATH, AND THE HEIRS OF SUCH CHILDREN OF JATHER PINKHAM
    AS MAY BE DEAD AT HIS DEATH, AND THE NEXT OF KIN OF SAID JATHER
    PINKHAM, AND L. E. MERCER, GUARDIAN AD LITEM.

(Filed 18 December, 1946.)

### 1. Estates § 10: Deeds § 6½ —

In determining the validity of a deed revoking a voluntary conveyance
of future interests limited to persons not *in esse*, G. S., 39-6, the equitable
jurisdiction of the court over trust estates is not involved.

### 2. Deeds § 6½ —

The power to revoke a voluntary conveyance of future interests limited
to persons not *in esse* under the provisions of G. S., 39-6, rests solely in the
grantor conveying such interests, and where deeds are executed by the
owner of lands to each of his children for the purpose of dividing his
lands among them, the fact that each of the children joins in the deeds
to the others gives them no right upon the death of the grantor to revoke
the contingent limitation over to unborn children of one of them, since
they cannot succeed the grantor in the power of revocation and are
strangers to that power.

### 3. Constitutional Law § 23—

There is no vested right in a continuance of the common or statute law,
and ordinarily a right created solely by statute may be taken away by
repeal or by new legislation.

### 4. Same: Deeds § 6½ —

The right to revoke a voluntary conveyance of future interests in lands
limited to persons not *in esse* is a personal power and privilege created by
statute and not a vested right within constitutional protection.

### 5. Same: Deeds § 6½ —

The power to revoke a voluntary conveyance of future interests in lands
limited to persons not *in esse* is not a property right, although the rights
created by the exercise of the power of revocation are property rights
within constitutional protection.

### 6. Constitutional Law § 24: Deeds § 6½ —

Even though the statutory power of revocation of a voluntary convey-
ance of future interests in lands limited to persons not *in esse* be regarded
as a vested right, the amendment of G. S., 39-6, by Session Laws of 1943,
ch. 437, giving the grantor six months after its effective date to exercise
the right of revocation or to file notice of intention to do so, is a reason-
able limitation, and therefore the application of the limitation of the
amendment to deeds executed prior to its effective date is constitutional.

**7. Constitutional Law § 24—**

Where a statute imposing a limitation or restricting the time within which a right may be exercised grants a reasonable time for the exercise of the rights therein affected, delay in the publication of such law has no bearing upon the reasonableness of the limitation since everyone is, held to have knowledge of general statutes from their effective dates.

**8. Same—**

Unless arbitrarily exercised, there is a legislative discretion as to the reasonableness of the time allowed for the exercise of rights affected by a change in the statutory limitations.

APPEAL by plaintiff from *Frizzelle, J.,* at October Term, 1946, of BEAUFORT.

By consent of parties this controversy was heard and determined by Judge Frizzelle without the intervention of a jury. From his findings of fact, supplemented by reference to the record, we endeavor to assemble the facts.

On 10 January, 1936, John E. Pinkham and wife, Stella, E. G. Jefferson and wife Cleva, H. L. Cayton and wife Lula, J. M. Congleton and wife Lela, and John R. Pinkham and wife Gladys, executed to William Pinkham and Jather Pinkham the deed presently summarized, which was recorded in the Beaufort County Registry on 13 January, 1936.

This deed conveys several parcels of land fully described therein, all of which was at the time owned by John E. Pinkham with the exception of a one-half interest in the Rascoe tract, which one-half was held by the plaintiffs under a prior deed.

The *habendum et tenendum* clause in the deed reads as follows:

"To HAVE AND TO HOLD, unto the said Jather Pinkham and William Pinkham for and during the term of their natural lives or either of them, subject to the conditions hereinafter set out, and then to such children of the said Jather Pinkham and William Pinkham as may be living at the time of their death and to the heirs of such children as may be dead and should both die without children, then to their next of kin, reserving, however, an estate for the natural lives of John E. Pinkham and Stella Pinkham or either of them in the land herein conveyed and this conveyance is made expressly subject to the life estate of John E. Pinkham and wife, Stella Pinkham. A condition of this conveyance to the aforesaid parties is that they shall not in any manner encumber by mortgage or otherwise convey their life estate herein granted and should said parties attempt to encumber or convey said life estate, then his or their interest in said land shall cease and determine and said estate shall vest immediately thereupon in the remaindermen above set out."

Contemporaneously therewith, John E. Pinkham apportioned and conveyed to his other children the land he wished them to have, and the whole matter was in the nature of a family settlement, the children of Pinkham joining in each deed for the purpose of renouncing any future claim.

The deed does not contain a provision that the future interest conveyed shall be irrevocable; and the judge found that it was voluntary, without consideration.

The parties to the deed were thus related: John E. Pinkham was the husband of Stella Pinkham (the second wife and not the mother of his children), and the father of Cleva Jefferson, Lula Cayton, Lela Congleton, John R. Pinkham, William Pinkham and Jather Pinkham.

John E. Pinkham died 14 June, 1944, leaving surviving him as his next of kin and heirs at law, his widow, Stella Pinkham, and all of the above named children except William, who died intestate in June, 1943, and without heirs except the brothers and sisters above named. Jather, still living, remains unmarried.

On 30 January, 1946, all the living heirs at law of John E. Pinkham, parties to the above deed, in their several names executed to themselves as grantees, also by name, a conveyance purporting to be a "Deed of Revocation," granting to the parties of the second part in fee and as tenants in common, all of the lands theretofore conveyed in the John E. Pinkham deed of 10 January, 1936, above described. The deed recites the execution of the prior deed, refers to authority of the statute, and formally and in terms purports to revoke the interest thereby conveyed. This revocation deed was recorded in Beaufort County Registry, 31 January, 1946.

On the facts found, Judge Frizzelle held that the "revocation deed" executed 30 January, 1946, was ineffectual to revoke any interest conveyed by the terms of the deed executed 10 January, 1936, by John E. Pinkham and others to William Pinkham and Jather Pinkham and their unborn children, and rendered judgment accordingly.

From this judgment the plaintiffs appealed.

*Junius D. Grimes, John A. Mayo, and LeRoy Scott for plaintiffs, appellants.*
*L. E. Mercer for defendants, appellees.*

SEAWELL, J. To fully understand what is involved in this appeal, and the basis of decision, it is necessary to refer chronologically to legislation in this State permitting and regulating revocation of future interests conveyed by voluntary deeds to persons not *in esse.* Changes in the law during the course of the transactions under review have to do with their validity and are challenged by the plaintiffs as infringing rights pro-

tected by the Constitution when applied to the power of revocation they now seek to assert. The original grant of the power of revocation must be interpreted, defined and distinguished as to the nature of the right conferred and as to those who are exclusively privileged to exercise it.

The deed of John E. Pinkham and others which the plaintiffs seek to revoke was executed 10 January, 1936. At that time C. S., 996, was in force, providing in part as follows:  ·

"The grantor in any voluntary conveyance in which some future interest in real estate is conveyed or limited to a person not *in esse* may, at any time before he comes into being, revoke by deed such interest so conveyed or limited. This deed of revocation shall be registered as other deeds; and the grantor of like interest for a valuable consideration may, with a joinder of a person from whom the consideration moved, revoke said interest in like manner."

The deed purporting to revoke the interest conveyed to the unborn children of William and of Jather Pinkham was executed on 30 January, 1946, and recorded 31 January. Meantime, several amendments had been made to the statute and it stood then as it stands now in G. S., 39-6.

To the statute as above quoted from C. S., 996, the Session Laws of 1943, chapter 437, had added the last three provisions, which we quote:

"Provided, further, that this section shall not apply to any instrument hereafter executed creating such a future contingent interest when said instrument shall expressly state in effect that the grantor, maker, or trustor may not revoke such interest: Provided, further, that this section shall not apply to any instrument heretofore executed whether or not such instrument contains express provision that it is irrevocable unless the grantor, maker or trustor shall within six months after the effective date of this proviso either revoke such future interest, or file with the trustee an instrument stating or declaring that it is his intention to retain the power to revoke under this section: Provided, further, that in the event the instrument creating such estate has been recorded, then the revocation or declaration shall likewise be recorded before it becomes effective."

The plaintiffs challenge the constitutionality of the provisions on the theory that they retroactively destroy or adversely affect a vested right created by the former statute,—the right to revoke the future interest in lands limited to the unborn children of Jather Pinkham.

Before we reach the constitutional question presented by appellants, we must first consider whether they are in position to raise it with respect to the lands owned by John E. Pinkham at the time of the conveyance, deferring the discussion of their status as to the one-half interest in the Rascoe tract, which under the findings of fact, belonged to them.

In the statute under review, North Carolina has gone further than most of her sister states in advancing the destructibility of future interests limited to persons not *in esse.* In many of the states this result is accomplished by court action between properly constituted parties with a guardian *ad litem* representing the unborn children, the court acting within its equitable jurisdiction. We are familiar with the application of the principle in cases involving. family settlements, sale of property where there is remainder limited to persons not *in esse,* and other instances where such a contingent interest is brought within reach, either by statute law or by judicial practice, or both.

Under the statute reviewed, the result is accomplished by direct action without the intervention of the court through a simple revocation of the interest by the grantor. Since the Court is not sitting in chancery in the present action, the guardian *ad litem* has no power to aid the Court and the Court no power to aid the guardian *ad litem* in any equitable compromise. It must affirm or disaffirm a *fait accompli,* deriving its validity, if it has any, from the act of revocation. The power given is extraordinary, and, while never seriously questioned, the Court should be careful to see that it is not extended beyond its intended limits.

1. The constitutionality of the statute with respect to revocation of future interests limited to persons not *in esse,* was sustained in *Stanback v. Bank,* 197 N. C., 292, 148 S. E., 313, on the theory that the interest had not vested because of the contingency involved. In dealing with such interests the statute is in line with modern trends both in legislation and judicature, and reflects an advanced public policy in providing for readjustments to social and family necessities which supervene before vesting of the interest, of greater importance than the prospect involved in a contingency that may never happen.

But the statute does not pave the way for an utter defeat of the contingent interest by putting it in the power of persons who had no hand in its making to recall the gift at their will and in their own interest. The statute, in so many words, confers the power of revocation on the grantor, recognizing his original ownership and leaving to him the privilege of making, by the act of revocation, what is virtually a new disposition. By no principle of law of which we are aware, could the plaintiffs, who are described as heirs at law of John E. Pinkham, succeed him in the power or right conferred by the statute, and exercise it to thwart the intent of the grantor, or recall or recapture the grant. To put it plainly, they are strangers to the power.

In the use of the term "grantor" the statute implies the person from whom the future estate or interest derived, and not a person who had no interest in the property, or power of disposition, although made a formal grantor for reasons not essential to its conveyance, or for the simultaneous conveyance of other interest. The fact that certain of the

plaintiffs joined in the deed made by John E. Pinkham is of no legal significance in respect to the lands then owned and conveyed by him, since their joinder was not essential to the grant.

We, therefore, reach the conclusion that the deed executed by plaintiffs 30 January, 1946, purporting to be a revocation deed, is ineffectual to revoke any interest in his own lands conveyed in the original deed of John E. Pinkham.

2. Nothing else appearing, the plaintiffs would have the present power of revocation with respect to the one-half interest in the Rascoe tract of which they were the owners and as to which they were grantors in the original Pinkham deed. But the question arises whether, since the plaintiffs did not act within the period limited by the statute, the power has not been constitutionally withdrawn.

The 1943 amendment, containing the powers above set out, was no doubt enacted to resolve a doubtful situation which had arisen through uncertainty as to the effect of the statute—C. S., 996—on the revocability of trusts, and the incidence of Federal taxation on trusts already set up, or hereafter to be created. It was intended to bring North Carolina into line with other states where the irrevocability of trusts could be assured to the grantor or settler when made. It was a question whether the statute, if considered as expressing a settled public policy, might not prevail over an express provision in the instrument purporting to make the disposition irrevocable, with the result that no trust could be made irrevocable by act of the grantor. The need of clarification was pointed out, and the amendment foreshadowed, by Professor Lowndes of Duke University Law School, writing upon the subject, "Federal Taxation as Applied to North Carolina Trusts for Unborn and Unascertained Beneficiaries," in 20 N. C. Law Review, page 278.

In 3 Scott, Trusts (1938), sec. 340, the North Carolina statute is treated as expressing the public policy of the State. The achievement of irrevocability through separate waiver was rendered difficult by the necessity of a consideration for the waiver,—a condition which could rarely be met. *MacMillan v. Trust Co.* (1942), 221 N. C., 352, 20 S. E. (2d), 276.

To make this statute prospective only, would not go far in remedying the existing situation since it would leave all existing trusts of that character, many of them of vast proportion, subject to the same uncertainty, largely depriving the legislation of any present value, as well as promoting discrimination. The Act, therefore, provides a period within which the grantor or settler under prior deeds might exercise the power, or file a written declaration of the intention to retain it.

The validity of the 1943 amendment is, for the first time, made the subject of appellate review. The economic importance of the result

is at once apparent; but the principles on which decision must rest remain the same.

It is said that no person has a vested right in a continuance of the common or statute law. It follows that, generally speaking, a right created solely by the statute may be taken away by its repeal or by new legislation. 16 C. J. S., Constitutional Law, sec. 223, *et seq.*

It is exceptively true that rights may accrue under a statute, or even be conferred by it, of such character as to be regarded as contractual and which cannot be defeated by subsequent legislation; 12 Am. Jur., Constitutional Law, p. 38, sec. 406; but we need not pursue that suggestion further as the power of revocation given by the statute is manifestly not of that character.

The appellants denominate it a "vested right"; the statute gives it no label. As a matter of public policy, expressing the current legal and social philosophy in respect to the use, control and succession of property generally, important to the public welfare and economy as well as to the individual, the Legislature conferred the right of revocation of contingent interests of persons not *in esse* upon the public, or upon that class of the public which might, in the course of events, have occasion to use it,—and to be repeated as often as occasion arose.

As a "right" in so far as the plaintiffs here are concerned, it was peripatetic, or wandering, and did not settle upon them until they had something to convey and had actually created the future contingent interest to which it might apply. Then the right accrued, in the sense that it might be presently exercised; but not in the sense of a *vested right* as that term is commonly understood and applied in constitutional law. And we are unable to find in it those inherent qualities that are necessary to give it the body and significance of a constitutionally protected property right, as it is here claimed to be.

The word "right" is a generic term, including, among many other meanings,—power, privilege, prerogative, immunity. In the dictionary of the law its meaning is restricted, specialized; qualified by the fact, or combination of facts, out of which the right arises. There has been no satisfactory general rule to aid us in making the distinction, which is necessary here, between mere personal powers and privileges created by statute or existing at common law and subject to legislative withdrawal, and those to be recognized as "vested rights" under constitutional protection. When dealing with rights of the latter class it will be found that text writers and courts are usually forced to define them in terms of themselves, or "beg the question." 2d Austin, Jurisprudence, sec. 1138. In determining what are rights or powers of the first class mentioned, resort is usually made to illustration. Our limited space forbids drawing examples from these illustrations, abundant as they are, for comparison with the power under review. We can only refer to easily

accessible texts where they may be found. Cooley's Constitutional Limitations, Vol. 2, p. 770, *et seq.;* 16 C. J. S., Constitutional Law, sec. 215, *et seq.;* 12 Am. Jur., Constitutional Law, sec. 583, *et seq.* In Selected Essays on Constitutional Law, Vol. 2, p. 266, there is an exhaustive and enlightening treatise dealing with the subject.

The distinction must be made that the power of revocation is one protected within the law, but not against the law. It is evident that a power, although it is in some way connected with property, does not thereby become a property right. However, respecting property rights thought qualified to be included within the constitutional protection, although no exact and all-inclusive definition is practicable, we submit the following description of such a right as sufficient for our present purposes:

"First, it would seem that a right cannot be considered a vested right unless it is something more than such a mere expectancy as may be based upon an anticipated continuance of the present general law; it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption for a demand made by another." Cooley's Constitutional Limitations, Vol. 2, p. 749.

Powers of the kind under review are generally regarded as "imperfect" or "inchoate" rights which may be taken away by statute before their attempted exercise, although, when exercised before the statutory withdrawal, the resulting estate is a vested right which cannot be retroactively affected. Directly in point is *Jennings v. Capen* (Illinois), 151 N. E., 900. In that case, by prior public law, the life tenant and reversioner had the power to destroy the contingent remainder by deed. Before the exercise of the power it was destroyed by subsequent legislation. It was held that the power was not a vested right but a mere inchoate right which the legislature could take away. See also *Peoples Loan and Exchange Bank v. Darlington,* 54 S. C., 413, 32 S. E., 513. We think this correctly states the principle of law which should be followed in the instant case.

Our conclusion is that the appellants had no vested right in the power of revocation they sought to exercise. It was a mere personal power or privilege, solely created by statute, reflecting the existing public policy and was subject to change or withdrawal at the pleasure of the Legislature at any time before its exercise and before the happening of the contingency of which it speaks.

Supposing it to be of a more stubborn and resistant character, as contended by the plaintiffs, the limitation for its exercise provided in the statute would still be within the legislative power. Statutes of limitation which are reasonable in their application may be applied to the

remedy if it does not unreasonably affect the right, and when the statute is not complied with, the owners may find the right foreclosed.

The appellants point out that the time limit put upon the exercise of the power of revocation was unreasonable; and that because of delay in the publication of the laws they may have been prejudiced. The courts have found no set rule to apply to such a situation than that which was long ago expressed by *Thorpe, C. J.* (1355):

"Although proclamation be not made in the county, everyone is bound to take notice of that which is done in Parliament; for as soon as the Parliament has concluded anything, the law intends that every person hath notice thereof, for the Parliament represents the body of the whole realm." Quoted in The Ann, 1 Fed. Cases, 397 (1812).

Generally speaking, unless arbitrarily exercised, there is a legislative discretion as to the reasonableness of the time allowed in a limitation and under the circumstances of this case it must be held that the time provided here is reasonable. *Turner v. New York,* 168 U. S., 90, 42 L. Ed., 392; *Wheeler v. Jackson,* 137 U. S., 245, 34 L. Ed., 659; *Davis v. Nation,* 82 Kan., 410, 108 Pac., 853.

The appellants are not in position to raise this question since the attempted exercise of the revocation was not made until 30 January, 1946, a period of nearly three years after the law went into effect.

Our conclusion is that the power of revocation did not constitute a vested right within the constitutional protection against statutory withdrawal, and the attempt to exercise it was of no effect.

The judgment of the court below is

Affirmed.