MARGARET WRENN ANDERSON, PLAINTIFF V. DR. DEAN GEORGE ASSIMOS, M.D., DR. R. LAWRENCE KROOVARD, M.D., DR. MARK R. HESS, M.D., WAKE FOREST UNIVERSITY PHYSICIANS, WAKE FOREST UNIVERSITY BAPTIST MEDICAL CENTER, THE MEDICAL CENTER OF BOWMAN GRAY SCHOOL OF MEDICINE AND NORTH CAROLINA BAPTIST HOSPITAL AND THE NORTH CAROLINA BAPTIST HOSPITALS, INCORPORATED, DEFENDANTS

No. COA00-587

(Filed 2 October 2001)

**1. Medical Malpractice— negligence—res ipsa loquitur—unfavorable reaction to medicine**

The trial court did not err in a medical malpractice action by granting defendants' motion to dismiss plaintiff patient's complaint alleging negligence under the theory of res ipsa loquitur based on plaintiff's unfavorable reaction to medicine given to plaintiff as part of her treatment, because: (1) the side effects of the medicine and defendants' possible failure to monitor those effects on plaintiff are not areas within the jury's common knowledge or experience; and (2) plaintiff needs expert testimony to establish the standard of care to be used in the administration of the medicine and defendants' possible breach of this standard.

**2. Medical Malpractice— Rule 9(j) certification—unduly burdensome requirement—equal protection violation—unconstitutional**

The trial court erred in a medical malpractice action by dismissing plaintiff patient's complaint based on an alleged failure to comply with N.C.G.S. § 1A-1, Rule 9(j) certification requirements, because: (1) the certification requirement violates Article I, Section 18 of the North Carolina Constitution since it impairs, unduly burdens, and in some instances prohibits the filing of any medical malpractice claim where the injured party is unable to

ANDERSON v. ASSIMOS

[146 N.C. App. 339 (2001)]

timely find an expert or is without funds; and (2) the certification requirement violates the equal protection clause of both the state and federal constitutions since it does not reflect the least restrictive method for the asserted state interest of preventing frivolous lawsuits.

Judge CAMPBELL concurring in part and dissenting in part.

Appeal by plaintiff from order filed 14 December 1999 by Judge James R. Vosburgh in Guilford County Superior Court. Heard in the Court of Appeals 27 March 2001.

*Mary K. Nicholson for plaintiff-appellant.*

*Tuggle, Duggins & Meschan, P.A., by Robert A. Ford and Demetrius L. Worley, for defendant-appellees.*

GREENE, Judge.

Margaret Wrenn Anderson (Plaintiff) appeals an order filed 14 December 1999 granting the motion of Dr. Dean George Assimos (Dr. Assimos), Dr. R. Lawrence Kroovard, Dr. Mark R. Hess, Wake Forest University Physicians, Wake Forest University Baptist Medical Center, The Medical Center of Bowman Gray School of Medicine, North Carolina Baptist Hospital, and The North Carolina Baptist Hospitals, Inc. (collectively, Defendants) to dismiss Plaintiff's complaint.

Plaintiff filed a complaint on 17 August 1999 alleging medical malpractice on the part of Defendants in their failure "to adequately and properly and fully inform[] her of the risks known to be associated with" the administration of the drug gentamicin, a drug given to Plaintiff during her treatment by Defendants. Plaintiff also alleged *res ipsa loquitur* in her complaint. On 23 August 1999, Plaintiff filed a motion to "extend the statute of limitations for a period of 120 days to file a complaint in medical malpractice conforming to . . . Rule 9(j) of the Rules of Civil Procedure as [it] relate[s] to medical malpractice actions." Plaintiff filed her amended complaint on 10 November 1999 detailing the medical treatment provided to her by Defendants and the symptoms she suffered after that treatment. Plaintiff's amended complaint, in pertinent part, alleged:

6. . . . [Plaintiff] went to the emergency room at North Carolina Baptist Hospital at the end of August of 1996 for a kidney problem . . . . [Plaintiff] became a little dizzy in the hospital.

ANDERSON v. ASSIMOS

[146 N.C. App. 339 (2001)]

When [Plaintiff] came home from the hospital, she started down the hall of her home and staggered. She got worse and became really nauseated . . . and vomited seven or eight times. Her head was dizzy and she felt drunk, her ears felt like she was in an airplane and they were pushing out. This was the first time that she had this problem with her ears that she can recall. It is also the first time that she had the symptoms of dizziness related to a drunken feeling that she felt when she tried to do anything. Dr. Assimos' office is located at Baptist Hospital. [Plaintiff] was taken in a [wheelchair] to see Dr. Assimos [who was treating her for a kidney problem] and he told her nothing was wrong with her. . . . She then went to Duke Hospital on her own initiative and saw at least two doctors at Duke Hospital. [Plaintiff] received no medication at Duke Hospital, but Duke Hospital did do some testing. . . . She had to be taken, by her son, to Duke Hospital in a wheelchair because of her inability to walk, due to the dizziness and related problems. . . . Dr. Assimos [telephoned Plaintiff] at home, after she came back from Duke Hospital, and Dr. Assimos wanted her to come back to Baptist Hospital. . . . Upon[] Dr. Assimos' request, she went back to Baptist Hospital and stayed several days in September[] 1996. [Plaintiff] had a lot of tests done, the doctors at Baptist Hospital told her that she had a stroke and that they had found an ulcer. They dismissed her and she went home in September[] 1996. Around the first of October[] 1996, she went to see Dr. Brown at North Carolina Baptist Hospital. . . . Dr. Brown put water in [Plaintiff's] ears and she could not feel the water. Dr. Brown asked [Plaintiff] . . . what medicine she had been given. . . . At the time . . . [Plaintiff] saw Dr. Brown, she had already [scheduled] an appointment . . . with Dr. Troost, again at North Carolina Baptist Hospital. After Dr. Troost looked at the results of the testing, he told [Plaintiff] that she had an equilibrium problem and that the drug "gentamicin" had burned out her ear. . . . [Dr. Assimos later telephoned Plaintiff] and he told her that gentamicin caused her problem. . . . [Plaintiff's kidney was removed and t]he kidney was practically a solid mass, like stone, when removed and was not functional. She still has problems with equilibrium, nausea and dizziness. . . . Plaintiff alleges that the drug that was administered was known to have a side effect that in fact occurred and had in fact occurred in other patients at the same hospital. [Defendants] failed to warn [Plaintiff] of the side effect. . . . [A] monitoring process was available to prevent the potential side effect and . . .

ANDERSON v. ASSIMOS

[146 N.C. App. 339 (2001)]

[D]efendants failed to monitor the drug and [Plaintiff's] injuries are the result of the drug treatment.

7. Pursuant to the injuries being caused by the sole acts of [Defendants, Plaintiff] alleges the doctrine of res ipsa loquitur.

8. Plaintiff contends that there was an injury, and that the occurrence causing the injury is one which ordinarily doesn't happen without negligence on someone's part and that the instrumentality which caused the injury was under the exclusive control and management of [Defendants].

Defendants filed a motion to dismiss Plaintiff's complaint on 16 November 1999 for Plaintiff's failure to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure.[1] At the hearing on Defendants' motion, Plaintiff's attorney stated Plaintiff is "an elderly woman, . . . who has a very limited income." Prior to filing her complaint, Plaintiff attempted to obtain an expert witness to certify her complaint and had sent her medical file to expert witnesses. Plaintiff, however, was unable to obtain an expert witness because Defendants failed to perform a monitoring test and the expert witnesses would have to testify Defendants "had improperly applied the test that they didn't take." At the conclusion of the hearing, the trial court allowed Plaintiff's motion to amend her complaint and also allowed Defendants' motion to dismiss Plaintiff's complaint.

---

The issues are whether: (I) Plaintiff alleged facts establishing negligence through *res ipsa loquitur*; and (II) the pre-filing certification requirement of Rule 9(j) violates Article I, Section 18 of the North Carolina Constitution and the equal protection clauses of the federal and state constitutions.

I

[1] Plaintiff argues the trial court erred in dismissing her complaint because her complaint stated a claim for negligence, alleging *res ipsa loquitur*. We disagree.

The doctrine of *res ipsa loquitur* applies if a plaintiff is able to establish, without the benefit of expert testimony, an injury would not

---

1. A complaint alleging medical malpractice must: (1) specifically assert the complaint has been reviewed by a person "who is expected to qualify" or who the "complainant will seek to have qualified" as an expert witness under Rule 702(e) of the Rules of Evidence; or (2) "allege[] facts establishing negligence under the existing common-law doctrine of" *res ipsa loquitur*. N.C.G.S. § 1A-1, Rule 9(j) (1999).

ANDERSON v. ASSIMOS

[146 N.C. App. 339 (2001)]

typically occur in the absence of some negligence by the defendant. *Diehl v. Koffer*, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000). Specifically, "the negligence complained of must be of the nature that a jury[,] through common knowledge and experience[,] could infer" negligence on the part of the defendant. *Id.* at 379, 536 S.E.2d 362. If a medical drug is "an approved and acceptable treatment and the dosages as prescribed [are] proper, the mere fact that [a plaintiff] had an unfavorable reaction from its use would not make the doctrine of *res ipsa loquitur* applicable." *Hawkins v. McCain*, 239 N.C. 160, 169, 79 S.E.2d 493, 500 (1954).

In this case, the side effects of gentamicin and Defendants' possible failure to monitor those effects on Plaintiff are not areas within a jury's common knowledge or experience. Thus, Plaintiff needs the benefit of expert testimony to establish the standard of care to be used in the administration of gentamicin and Defendants' possible breach of this standard of care. *See id.* Accordingly, the doctrine of *res ipsa loquitur* did not apply to Plaintiff's medical malpractice action.

II

**[2]** Plaintiff next argues the trial court erred in dismissing her complaint because Rule 9(j) is unconstitutional in that it unduly restricts her access to the courts and violates the equal protection clause of the state and federal constitutions.[2]

### Access to the courts

Our North Carolina Constitution provides that "every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18. This section was added to our North Carolina Constitution in 1868

---

2. We note this constitutional question was not raised below at the trial court, although Plaintiff has made it the basis of an assignment of error in the record to this Court. Moreover, both Plaintiff and Defendants fully addressed the constitutional issue, and Defendants did not object to Plaintiff arguing this issue for the first time on appeal. Generally, constitutional questions that were not raised and passed upon by the trial court, will not be considered on appeal. *State v. Cummings*, 353 N.C. 281, 292, 543 S.E.2d 849, 856 (2001). Nevertheless, pursuant to Rule 2 of the Appellate Rules of Procedure, we elect to address the constitutional question. *See State v. Elam*, 302 N.C. 157, 161, 273 S.E.2d 661, 664 (1981); *see also State v. Brown*, 320 N.C. 179, 211, 358 S.E.2d 1, 22, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987); *State v. Swann*, 322 N.C. 666, 671, 370 S.E.2d 533, 536 (1988); *Rice v. Rigsby*, 259 N.C. 506, 511, 131 S.E.2d 469, 472 (1963).

and has its roots in the Magna Carta. John V. Orth, *The North Carolina State Constitution* 54 (1993). The promise was that "[j]ustice would be available to all who were injured; to this end, the courts would be 'open.' " *Id.* The General Assembly, therefore, is "clearly forbidden" from enacting any statute that "impairs" the right of any person to recover for an injury to his person, property, or reputation. *Osborn v. Leach*, 135 N.C. 628, 631, 47 S.E. 811, 812 (1904). The General Assembly is permitted, under the "due course of law" language of section 18, to "define the circumstances under which a remedy is legally cognizable and those under which it is not." *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 444, 302 S.E.2d 868, 882 (1983). Thus, the General Assembly is permitted to abolish or modify a claim if it has not vested, *Pinkham v. Unborn Children of Jather Pinkham*, 227 N.C. 72, 78, 40 S.E.2d 690, 694-95 (1946), establish a statute of limitations, *Bolick v. American Barmag Corp.*, 54 N.C. App. 589, 593, 284 S.E.2d 188, 191 (1981), *modified on other grounds*, 306 N.C. 364, 293 S.E.2d 415 (1982), establish a statute of repose, *Lamb*, 308 N.C. at 444, 302 S.E.2d at 882, or establish limited immunities for some claims, *Pangburn v. Saad*, 73 N.C. App. 336, 347, 326 S.E.2d 365, 372 (1985). In no event, however, may the General Assembly under the guise of "due course of law" deny a person, whose claim is not barred by the statutes of limitations/repose, the "opportunity to be heard before being deprived of property, liberty[,] or reputation, or having been deprived of either," deny that person "a like opportunity [for] showing the extent of his injury" or deny that person an adequate remedy. *Osborn*, 135 N.C. at 636-37, 47 S.E. at 814.

In this case, the General Assembly has placed a restriction on a party's right to file a malpractice claim against a "health care provider." N.C.G.S. § 1A-1, Rule 9(j) (1999). That restriction requires the party's pleading to certify, in her complaint, that the medical care has been "reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care."[3] N.C.G.S. § 1A-1, Rule 9(j)(1) (1999). The failure to include this certification in the complaint mandates the dismissal of the complaint. *Id.* This certification requirement impairs, unduly burdens,[4] and in some instances, where the injured party is

---

3. There is no similar requirement for non-medical malpractice claims.

4. "An undue burden exists, and therefore a provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path" of a party seeking

unable to timely find an expert or is without funds to employ such an expert or find an attorney who is willing to advance the funds to employ an expert, prohibits the filing of any medical malpractice claim. Even if an expert is obtained, Rule 9(j) places in the hands of that expert the right to decide if the injured party may proceed into court with her claim. It is for the courts of this state to adjudicate in a meaningful time and manner the merits of an injured party's claim after granting a hearing appropriate to the nature of the case. Because Rule 9(j) denies a plaintiff this right, it violates Article I, Section 18 of the North Carolina Constitution and is therefore void. *See Boddie v. Connecticut*, 401 U.S. 371, 378, 28 L. Ed. 2d 113, 119 (1971) (holding due process prohibits a state from denying, solely because of inability to pay filing fee, access to the courts to individuals who seek judicial dissolution of their marriage).

*Equal protection*

Moreover, Rule 9(j) classifies malpractice actions into two groups: medical and non-medical. This classification implicates the equal protection clause and thus can be sustained, because it affects a fundamental right (Article I, Section 18 of the North Carolina Constitution), *see Virmani v. Presbyterian Health Services Corp.*, 350 N.C. 449, 476, 515 S.E.2d 675, 693 (1999), *cert. denied*, 529 U.S. 1033, 146 L. Ed. 2d 337 (2000); *see also Comer v. Ammons*, 135 N.C. App. 531, 539, 522 S.E.2d 77, 82 (1999) (fundamental rights are those explicitly or implicitly guaranteed by the federal or state constitutions), only if it serves a compelling state interest and the statute is narrowly drawn to promote that interest, "without needless overinclusion or suspicious underinclusion, thereby favoring the use of the least restrictive alternative," *see* Louis D. Bilionis, *Liberty, the "Law of the Land," and Abortion in North Carolina*, 71 N.C. L. Rev. 1839, 1850 (1993); *see also Reno v. Flores*, 507 U.S. 292, 302, 123 L. Ed. 2d. 1, 16 (1993) (government cannot infringe on fundamental rights "no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest"); *Roe v. Wade*, 410 U.S. 113, 155, 35 L. Ed. 2d 147, 178 (1973) (regulation limiting fundamental rights can only be justified by a compelling state interest and "must be narrowly drawn to express only the legitimate state interests at stake").

---

to exercise her constitutional right. *See Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 878, 120 L. Ed. 2d 674, 715 (1992) (using "undue burden" test to balance constitutional right against state's interest).

In this case, the interest asserted by Defendants is that Rule 9(j) prevents frivolous lawsuits. There is nothing in this record to support the claim that frivolous lawsuits were a problem in medical malpractice cases before the enactment of Rule 9(j). Even if we assume it is a problem, there is nothing in this record to support the claim that Rule 9(j) alleviates that problem or that the problem is not also present in the context of non-medical practice actions. In any event, assuming there is such a problem unique to medical malpractice actions, Rule 9(j) is not the least restrictive method for solving the problem. Many states addressing this issue have adopted medical review panels which simply require the claim be reviewed prior to the filing of a medical malpractice action. 1 David W. Louisell and Harold Williams, *Medical Malpractice* § 13A (2001). These panels are "seen as a device designed to [weed] out frivolous medical malpractice claims and to encourage timely settlement of meritorious claims." *Id.* Failure to settle the claim, however, does not preclude the filing of the claim. *Id.* Thus, frivolous claims can be discouraged and done so in a manner that does not deny access to the courts. Accordingly, because Rule 9(j) does not reflect the least restrictive method for addressing the asserted state interest, it violates the equal protection clauses of both the federal and state constitutions and is therefore void.

Because Rule 9(j) is unconstitutional and therefore void, Plaintiff is not obligated to meet the pleading requirements of Rule 9(j). The dismissal of the action for failure to comply with Rule 9(j) must, therefore, be reversed and the matter remanded to the trial court.

Reversed and remanded.[5]

Judge McGEE concurs.

Judge CAMPBELL concurs in part and dissents in part in a separate opinion.

CAMPBELL, Judge, concurring in part and dissenting in part.

I concur with the majority opinion in holding that the doctrine of *res ipsa loquitur* did not apply to plaintiff's medical malpractice

---

5. Because Rule 9(j) is unconstitutional in that it unduly restricts access to the courts and violates the equal protection clause of the state and federal constitutions, we need not address Plaintiff's arguments concerning the constitutionality of the rule based on exclusive emoluments or due process.

action in that the alleged acts of negligence are not areas within a jury's common knowledge or experience, and, thus, plaintiff would need the benefit of expert testimony to establish the applicable standard of care and any possible breach of this standard of care by defendants. However, I respectfully dissent from the majority's holding that the trial court erred in dismissing plaintiff's complaint because N.C. R. Civ. P. 9(j) (Rule 9(j)) is unconstitutional.

As the majority notes, plaintiff filed her original complaint on 17 August 1999, and then, on 23 August 1999, filed a motion pursuant to Rule 9(j)(3) requesting an additional 120 days to file a complaint conforming to Rule 9(j). The record does not indicate whether plaintiff ever brought her motion pursuant to Rule 9(j)(3) on for a hearing, and the trial court did not enter an order extending the statute of limitations. On 10 November 1999, plaintiff filed an amended complaint identical to her original complaint with the exception of a more extensive recitation of factual allegations detailing the medical treatment defendants provided her and the symptoms she suffered after that treatment. The amended complaint did not include the certification requirements of Rule 9(j)(1) or (2), instead stating, as did the original complaint, that it was being brought under the doctrine of *res ipsa loquitur* under Rule 9(j)(3). Defendants filed a motion to strike the amended complaint and a motion to dismiss pursuant to Rule 9(j) on 16 November 1999. After a hearing, the trial court denied defendants' motion to strike but allowed defendants' motion to dismiss for failure to comply with Rule 9(j). Plaintiff gave timely notice of appeal.

Although not raised before and ruled upon by the trial court, plaintiff made constitutional issues the basis of an assignment of error in the record on appeal to this Court. Specifically, plaintiff asserted that the pre-filing certification requirement of Rule 9(j) violates article I, section 18 of the North Carolina Constitution and the equal protection clauses of the federal and state constitutions. In their respective briefs, both parties fully addressed the issue of whether Rule 9(j) unconstitutionally restricts access to the courts in violation of article I, section 18 of the North Carolina Constitution. However, plaintiff did not address the equal protection argument in her brief to this Court. As the majority points out, constitutional questions that were not raised and passed upon by the trial court, generally will not be considered on appeal. *State v. Cummings*, 353 N.C. 281, 291, 543 S.E.2d 849, 856, *reh'g dis'd*, 353 N.C. 533, 549 S.E.2d 553 (2001). Further, assignments of error not set out or supported in the

appellant's brief, will be deemed abandoned pursuant to N.C. R. App. P. 28(b)(5). However, the majority has elected to consider the important constitutional issues raised pursuant to this Court's discretionary authority under N.C. R. App. P. 2. While I do not object to the majority's election to address these important constitutional issues, I cannot agree with the majority's conclusion that Rule 9(j) is unconstitutional either under article I, section 18 of the North Carolina Constitution or under the equal protection clauses of the federal and state constitutions.

## Access to the Courts

Although I wholeheartedly concur with the majority that the courts of this State should be open to all and that the General Assembly is forbidden from impairing the rights guaranteed by article I, section 18 of the North Carolina Constitution, *see Osborn v. Leach,* 135 N.C. 628, 631, 47 S.E. 811, 812 (1904), our General Assembly is nevertheless permitted, under the "due course of law" language of article I, section 18, to "define the circumstances under which a remedy is legally cognizable and those under which it is not." *Lamb v. Wedgewood South Corp.,* 308 N.C. 419, 444, 302 S.E.2d 868, 882 (1983). Further, it is well-established that there is a presumption in favor of the constitutionality of any legislative enactment and that reasonable doubts must be resolved in favor of sustaining legislative acts. *Id.* at 433, 302 S.E.2d at 876. Application of these principles to the instant case leads me to conclude that Rule 9(j) does not unconstitutionally restrict plaintiff's access to the courts in violation of article I, section 18.

I disagree with the majority's conclusion that the pre-filing certification requirement of Rule 9(j) so impairs and unduly burdens the right to file a medical malpractice action that it runs afoul of article I, section 18. Rather, I view Rule 9(j) as a permissible attempt by our General Assembly to define the circumstances under which relief will be available to an injured plaintiff in certain medical malpractice contexts. *See Pangburn v. Saad,* 73 N.C. App. 336, 326 S.E.2d 365 (1985) (upholding the constitutionality of N.C.G.S. § 122-24, which grants personal immunity from certain suits to staff members at state hospitals). The majority recognizes that since plaintiff's complaint does not allege facts that bring it within the doctrine of *res ipsa loquitur,* plaintiff "needs the benefit of expert testimony to establish the standard of care to be used with the administration of gentamycin and Defendants' possible breach of this standard of care." Thus, it is without contention that plaintiff would ultimately need an expert in order

ANDERSON v. ASSIMOS

[146 N.C. App. 339 (2001)]

to meet her burden to carry her claim to a jury. To require plaintiff to assert in her pleading that the medical care has been reviewed by a person who is at least presumably qualified and willing to testify for plaintiff, does not in my opinion deny plaintiff the right of access to our courts. Rather, Rule 9(j) is similar to those statutory prohibitions, such as our rules of procedure and statutes of limitations, as well as constitutional provisions such as sovereign immunity, which restrict the ability of plaintiffs to recover for certain injuries, but do not completely deny recovery or abolish common law causes of action, and have consistently been found not to violate article I, section 18 of the North Carolina Constitution. *See Dixon v. Peters*, 63 N.C. App. 592, 306 S.E.2d 477 (1983).

## Equal Protection

I likewise dissent from the majority's conclusion that Rule 9(j) violates the equal protection clauses of the federal and state constitutions. The majority states that Rule 9(j) creates two classes of individuals, those seeking to assert a medical malpractice claim and those seeking to assert a non-medical malpractice claim, and unconstitutionally discriminates against those seeking to assert a medical malpractice claim. While I agree with the majority's identification of the two classes created by Rule 9(j), I do not agree that Rule 9(j) affects a fundamental right, and is therefore subject to strict scrutiny analysis. Rather, the right arguably being infringed upon by Rule 9(j) is the right to file a medical malpractice claim, which I do not agree rises to the level of a fundamental right. Since no suspect class or fundamental right is involved, Rule 9(j) need only bear a rational relationship to a legitimate government interest in order to comply with equal protection.

While the majority correctly contends that the record contains no support for defendants' claim that frivolous medical malpractice lawsuits were a problem before the enactment of Rule 9(j), or that Rule 9(j) has alleviated that problem, that is necessarily the case since the constitutionality of Rule 9(j) was not argued in the trial court, and plaintiff did not present any argument in her brief that Rule 9(j) violated equal protection.

However, there is ample judicial authority from which one can conclude that the purpose of Rule 9(j) is to free the courts from frivolous medical malpractice suits at an early state of litigation. Since the early-1970's, nearly every jurisdiction in the country has responded in some fashion to the perceived medical malpractice

insurance crisis, in an attempt to reduce the cost of medical malpractice insurance and insure its continued availability to the providers of health care. In North Carolina, the Report of the North Carolina Professional Liability Insurance Study Commission (1976), analyzed the malpractice crisis in this state, with the Study Commission recommending procedural changes which were subsequently enacted by the legislature. *See Roberts v. Durham County Hospital Corp.*, 56 N.C. App. 533, 289 S.E.2d 875 (1982), *aff'd*, 307 N.C. 465, 298 S.E.2d 384 (1983) (upholding the constitutionality of the statute of repose (N.C.G.S. § 1-15(c)) for a medical malpractice action based upon the leaving of a foreign object in a person's body during the performance of professional services). In the more recent past, nearly every state has passed some form of a remedial measure designed to weed out frivolous medical malpractice claims at an early stage of litigation. As the majority points out, some states have addressed this issue by the adoption of medical review panels which simply require that medical malpractice claims be reviewed prior to being filed. 1 David W. Louisell and Harold Williams, *Medical Malpractice* § 13A (2001). Many other states have adopted requirements similar to Rule 9(j), requiring the filing of an affidavit of an expert witness or a summary of the expert's testimony concerning the merits of the claim. *Id.* § 9.07[2]. Such statutes have consistently been held to be rationally related to the legitimate state interest of eliminating frivolous medical malpractice suits. *See Mahoney v. Doergoff Surgical Servs.*, 807 S.W.2d 503 (Mo. Sup. Ct. 1991); *Henke v. Dunham*, 450 N.W.2d 595 (Minn. Ct. App. 1990); *Sakovich v. Dodt*, 529 N.E.2d 258 (Ill. Ct. App. 1988). I agree with the reasoning of these cases and would hold that Rule 9(j) does not violate equal protection.

For the foregoing reasons, I respectfully dissent, and would affirm the order of the trial court.