HOPINEAL HINES BEST, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF H. B. BEST, PLAINTIFFS v. WAYNE MEMORIAL HOSPITAL, INC., DOUGLAS M. RUSSELL, M.D., JOHN DOE I, JOHN DOE II, JOHN DOE III, DEFENDANTS

No. COA00-1337; No. COA00-1449

(Filed 18 December 2001)

### 1. Medical Malpractice— Rule 9(j) certification—extension of statute of limitations

The trial court erred in a medical malpractice action by granting defendants' motion to dismiss based on its ruling that plaintiff's 120-day extension of the statute of limitations under N.C.G.S. § 1A-1, Rule 9(j) was defective even though Rule 9(j) is now void, because: (1) plaintiff must be accorded a reasonable period of time to file suit; (2) plaintiff's reliance upon the extension located in Rule 9(j) will be honored as being filed within the time limits previously in effect; and (3) the case remains viable since the total elimination of the statute of limitations extension would be an inherent violation of due process.

### 2. Medical Malpractice— Rule 9(j) certification—failure to comply with requirements—resident superior court judge

The trial court erred in a medical malpractice action by granting defendants' motion to dismiss based on plaintiff's alleged failure to comply with N.C.G.S. § 1A-1, Rule 9(j)'s requirement to have a resident superior court judge hear the motion for extension of time when a judge assigned to the pertinent county by the Chief Justice of the Supreme Court heard the motion instead of the resident superior court judge of that county, because: (1) although a Rule 9(j) extension motion is to be heard by a resident judge when one is available, it is proper for the duly appointed presiding superior court judge to hear and sign the motion when the resident judge is unavailable or nonexistent; and (2) N.C.G.S. § 7A-47 provides that a presiding superior court judge duly assigned by the Chief Justice of the Supreme Court acts with the power of the resident superior court judge.

Appeal by plaintiff from order entered 1 May 2000 by Judge Benjamin G. Alford in Wayne County Superior Court. Heard in the Court of Appeals 17 October 2001.

*Burford & Lewis, P.L.L.C., by Robert J. Burford, for plaintiff appellant.*

BEST v. WAYNE MEM'L HOSP., INC.

[147 N.C. App. 628 (2001)]

*Heilig, McKenry, Fraim and Lollar, by Robert E. Moreland, for defendant appellee Wayne Memorial Hospital, Inc.*

*Walker, Clark, Allen, Herrin & Morano, L.L.P., by Mark R. Morano, for Douglas M. Russell, M.D., defendant appellee.*

*Beaver, Holt, Sternlicht, Glazier, Carlin, Britton & Courie, P.A., by Richard B. Glazier, amicus curiae for The North Carolina Academy of Trial Lawyers.*

McCULLOUGH, Judge.

Plaintiff appeals from the orders of dismissal entered by Judge Alford at the 7 February and 17 April 2000 Sessions of Wayne County Civil Superior Court.

On 12 November 1997 in Wayne County Superior Court Hopineal Hines Best (hereinafter plaintiff) brought a wrongful death suit individually and as administratrix of the estate of H. B. Best against defendants Wayne Memorial Hospital (the Hospital), Douglas M. Russell, M.D. (the Doctor), and other defendants who at that time had not been named. Previously, on 7 July 1997, plaintiff had filed a Rule 9(j) motion to extend the statute of limitations prior to filing her complaint. This motion was granted by Judge Ernest B. Fullwood on 7 July 1997, and filed on 11 July 1997. Judge Fullwood had been assigned to Wayne County by the Chief Justice of the Supreme Court of the State of North Carolina.[1] Judge Fullwood was the Resident Superior Court Judge for New Hanover County, not Wayne County, nor has he ever been the Resident Superior Court Judge of Wayne County. The sole Resident Superior Court Judge of Wayne County at all relevant times was Judge Paul Wright.

In his affidavit, plaintiff's attorney, Robert Burford, testified that he searched the Wayne County Courthouse for Judge Wright, only to learn that he was on vacation.[2] Mr. Burford then called the Administrative Office of the Courts (AOC) for guidance as to the situation. The AOC advised Mr. Burford to get the presiding judge to rule on the order and sign it because "he was the only judge assigned to Wayne County." Judge Fullwood then heard the motion and ordered

---

1. Judge Quentin Sumner was originally assigned to Wayne County for the relevant times, but was replaced by Judge Fullwood for reasons not in the record.

2. Judge Wright maintains a general policy to recuse himself from all medical malpractice cases that arise in Wayne County. Thus, had he been present on the 7th, Judge Wright presumably would not have heard the motion.

BEST v. WAYNE MEM'L HOSP., INC.

[147 N.C. App. 628 (2001)]

the statute of limitations extended pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure. The plaintiff then filed her complaint on 12 November 1997, and defendants filed their respective answers, the Hospital's answer on 18 December 1997, and the Doctor's answer on 8 January 1998. Among other things, defendants alleged that plaintiff's claim was time barred by the statute of limitations.

Approximately two years later, both defendants filed motions to dismiss on the grounds of failure to comply with Rule 9(j) (the Doctor on 7 February 2000 and the Hospital on 8 March 2000). Specifically, they claimed that Judge Fullwood had no authority to hear the motion because he was not a Resident Superior Court Judge of Wayne County as required by Rule 9(j). While heard separately, the Doctor on 16 March 2000 and the Hospital on 1 May 2000, essentially the same order was entered for both defendants by Judge Benjamin Alford. Judge Alford's order concluded that, since Judge Fullwood was not a Resident Superior Court Judge of Wayne County, he did not have authority to grant the motion. Thus, no order had been entered to extend the statute of limitations, and plaintiff's cause of action was barred by the applicable statute of limitations. It is from these orders that plaintiff appeals.

The plaintiff makes the following assignments of error: that the trial court erred in (I) dismissing the plaintiff's action on grounds of noncompliance with N.C. Gen. Stat. § 1A-1, Rule 9(j) (1999); (II) ruling that plaintiff's extension of the statute of limitations pursuant to Rule 9(j) was defective for the reason that the extension order lacked the signature of the sole resident superior court judge who recused himself; (III) ruling that the "resident judge" requirement for extension of the statute of limitations under Rule 9(j) does not violate constitutional protections afforded by the Constitution of the State of North Carolina; (IV) ruling that the "resident judge" requirement for extension of the statute of limitations under Rule 9(j) does not violate constitutional protections afforded by the Constitution of the United States of America; (V) ruling that Rule 9(j) is constitutional under the Constitution of the State of North Carolina; (VI) ruling that Rule 9(j) is constitutional under the Constitution of the United States of America; and (VII) ruling that one superior court judge has the power to directly or indirectly overrule the rulings of another superior court judge on issues regarding N.C. Gen. Stat. § 1A-1, Rule 9(j).

### Discussion of *Anderson v. Assimos*

This Court notes from the outset that the decision of *Anderson v. Assimos*, 146 N.C. App. 339, 553 S.E.2d 63 (2001), finding Rule 9(j) to be unconstitutional and therefore void, is binding and controlling in the present case. The *Anderson* Court found that Rule 9(j) violated the open access to the courts provision found in N.C. Const. art. I, § 18, and the equal protection clause of the United States and North Carolina Constitutions.

As to access to the courts, *Anderson* held that the General Assembly had

> placed a restriction on a party's right to file a malpractice claim against a "health care provider" [that] impairs, unduly burdens, and in some instances, where the injured party is unable to timely find an expert or is without funds to employ such an expert or find an attorney who is willing to advance the funds to employ an expert, prohibits the filing of any medical malpractice claim.

*Anderson*, 146 N.C. App. at 344-45, 553 S.E.2d at 67-68.

Under equal protection, *Anderson* concluded that Rule 9(j) classified malpractice actions into two groups: medical and non-medical. *Id.* at 345, 553 S.E.2d at 68. *Anderson* also determined that a fundamental right was involved from the above violation of the access to the courts provision. *Id. Anderson* held that Rule 9(j) was not the least restrictive means for the General Assembly to achieve its interest in preventing frivolous lawsuits. *Id.*

The plaintiff in *Anderson* had her complaint dismissed for failure to comply with the certification requirements of Rule 9(j). The plaintiff did file for an extension of time pursuant to Rule 9(j), but it was not pertinent on appeal. The *Anderson* Court reversed the dismissal and remanded the case for trial.

[1] Defendant Dr. Russell, in the present case, through memorandum of additional authority, cites this Court to the *Anderson* case and contends that the dismissal of plaintiff's action below should now be affirmed. Defendant Dr. Russell reasons that because Rule 9(j) is now void, it follows that the 120-day extension contained in Rule 9(j) is also void, and plaintiff cannot now rely on this extension. This being the case, plaintiff's action was filed after the statute of limitations had run, and is time barred.

Similar problems have confronted the judicial system occurring primarily when the Legislature enacted new statutes which shortened the statute of limitations. In *Flippin v. Jarrell*, 301 N.C. 108, 270 S.E.2d 482 (1980), the Legislature had changed the statute of limitations that was applicable to the plaintiff in that case. The *Flippin* Court stated that "[i]f the new statute shortens the period . . . it must, to comport with due process, provide a reasonable time for filing actions which have accrued but which have not been filed when the new statute takes effect." *Flippin*, 301 N.C. at 113, 270 S.E.2d at 486; *Barnhardt v. Morrison*, 178 N.C. 563, 101 S.E. 218 (1919).

In *Flippin*, if the new statute had been applicable to the plaintiff, it would have effectively barred plaintiff's action immediately upon the statute's taking effect. There the plaintiff only had 39 days in which to bring her claim after the new law went into effect. Our Supreme Court held this time period to be constitutionally insufficient and unreasonable.

That is essentially the same situation we have here in *Best*. According to defendant, as soon as the *Anderson* decision became law, the Best claims were effectively barred because the extension of time relied upon by plaintiff was no longer viable. Plaintiff would not have had any time to file, much less 39 days. Therefore under the rule set forth in *Flippin*, plaintiff must be accorded a reasonable period of time to file suit. Plaintiff filed within the time allowed by Rule 9(j). We hold that the Due Process Clause of the Fourteenth Amendment of the United States Constitution, as well as its North Carolina counterpart would be violated if this Court were to deprive plaintiff of her opportunity to file suit within a reasonable period of time.

The same sort of reasoning was recognized and followed in *Reunion Land Co. v. Village of Marvin*, 129 N.C. App. 249, 497 S.E.2d 446 (1998). In *Reunion*, the Court stated that:

> In North Carolina, where the legislature shortens the statute of limitations for the filing of an action, a party with a claim at the time of the amendment has a reasonable time to file that claim, but such reasonable time cannot exceed the limitations period allowed under the new law.

*Id.* at 250, 497 S.E.2d at 447; *see Culbreth v. Downing*, 121 N.C. 205, 28 S.E. 294 (1897).

**BEST v. WAYNE MEM'L HOSP., INC.**

[147 N.C. App. 628 (2001)]

In *Reunion*, the statute of limitations was shortened from nine months to two months. The facts were that one month after the cause of action had accrued, while plaintiff had eight more months to file, the Legislature changed the statute of limitations from nine to two months. *Reunion* held, relying on *Culbreth*, that from the time the law was enacted, the plaintiff had two months to file. *Reunion*, 129 N.C. App. at 251, 497 S.E.2d at 447-48. Since the plaintiff did not comply with this, they were indeed time barred. *Id.*

Applying the *Reunion* reasoning to the present case, plaintiff Best had 120 days from when she got the extension. When *Anderson* took effect declaring Rule 9(j) unconstitutional, the extension was gone—no longer on the books. There was no new statute of limitations to go by. Thus, plaintiff's reliance upon the extension located in Rule 9(j) will be honored as being filed within the time limits previously in effect in light of *Flippin* and *Reunion*.

For all litigants situated as is plaintiff in this case, having relied on Rule 9(j)'s extension provision, their cases remain viable as the total elimination of the statute of limitations extension would be an inherent violation of due process. Therefore, the extension granted in this case was not invalidated by *Anderson*.

It thus becomes necessary for this Court to address the "resident" judge issue originally raised.

## Discussion of the Extension of Time

[2] Both plaintiff and The North Carolina Academy of Trial Lawyers in their Amicus Curiae brief argue that to uphold Rule 9(j)'s constitutionality as to the extension of time, it must be construed to allow a "nonresident" superior court judge to sign a motion to extend time for a pre-filing expert certification when a "resident" superior court judge in the county where the cause of action arose is unavailable or nonexistent. We agree.

Rule 9(j) of the North Carolina Civil Procedure allows the extension of the statute of limitations in medical malpractice cases:

Upon motion by the complainant prior to the expiration of the applicable statute of limitations, *a resident judge of the superior court of the county in which the cause of action arose* may allow a motion to extend the statute of limitations for a period not to exceed 120 days to file a complaint in a medical malpractice action in order to comply with this Rule, upon a determina-

tion that good cause exists for the granting of the motion and that the ends of justice would be served by an extension.

N.C. Gen. Stat. § 1A-1, Rule 9(j) (emphasis added).

Defendants and the trial court followed a literal interpretation of the statute and concluded that *only* the resident superior court judge has the authority to rule on such a motion. It followed that since Judge Fullwood was not a Resident Superior Court Judge of Wayne County, he could not have had the authority to grant the motion.

This Court has recently said that "Rule 9(j) was 'intended, in part, to protect defendants from having to defend frivolous medical malpractice actions' by requiring that a qualified medical expert review a potential plaintiff's complaint." *Stewart v. Southeastern Reg'l Med. Ctr.*, 142 N.C. App. 456, 462, 543 S.E.2d 517, 521 (2001) (quoting *Webb v. Nash Hosp., Inc.*, 133 N.C. App. 636, 639, 516 S.E.2d 191, 194, *disc. reviews denied*, 351 N.C. 122, 541 S.E.2d 471 (1999)). The *Stewart* case continued by stating that:

> In order to comply with Rule 9(j), the collateral extension provision grants plaintiffs additional filing time to gather the medical expertise that they need to support legitimate claims. Thus the rule was intended both to protect defendants from frivolous suits as well as to protect plaintiffs with meritorious cases from losing their rights.

*Id.* This being the case, we do not believe that our Legislature intended for some plaintiffs to have more or better access to the courts of our state for this extension.

It is a basic tenet that our laws are to treat all of our citizens equally. N.C. Const. art. I, § 19. Within this tenet is the equally important right that all citizens have an equal opportunity to avail themselves of the law. N.C. Const. art. I, § 18.

It is a reality in North Carolina that some counties have several resident superior court judges while other counties have but one. Some counties are included in a judicial district, but have no resident superior court judge at all. If we were to follow defendants' interpretation, the plaintiffs in counties without a resident superior court judge would not receive a benefit conferred by the Legislature upon the plaintiffs in other counties with resident superior court judges. By the same token, counties with only one resident superior court

judge, such as the case here with Wayne County, could find plaintiffs potentially deprived of the benefit of the extension depending upon the schedule and/or health of that judge, or even the judge's willingness to hear such motions. Such would have been the case here: Wayne County would have been effectively without a resident superior court judge in this limited area because of Judge Wright's longstanding policy to recuse himself from all discretionary matters involving medical malpractice in Wayne County.

Our decision today, however, does not rest on constitutional grounds. "We rely, instead, on the familiar canon of statutory construction that '[w]here one of two reasonable constructions will raise a serious constitutional question, the construction which avoids this question should be adopted.' " *Delconte v. North Carolina*, 313 N.C. 384, 402, 329 S.E.2d 636, 647 (1985) (quoting *In re Arthur*, 291 N.C. 640, 642, 231 S.E.2d 614, 616 (1977)).

> "The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. *Even to avoid a serious doubt the rule is the same.*"

*Id.* (quoting *In re Dairy Farms*, 289 N.C. 456, 465-66, 223 S.E.2d 323, 328-29 (1976) (quoting *NLRB v. Jones and Loughlin Steel Corp.*, 301 U.S. 1, 81 L. Ed. 893 (1936))).

We are mindful that "[w]e are not at liberty to give a statute a construction at variance with [the Legislature's] intent, even though such construction appears to us to make the statute more desirable and free it from constitutional difficulties." *State v. Fulcher*, 294 N.C. 503, 520, 243 S.E.2d 338, 350 (1978). We also analyze this case in light of two other principles, in addition to the ones listed above.

First, this Court has a "general policy of liberality in construing our rules of civil procedure." *Stewart*, 142 N.C. App. at 462, 543 S.E.2d at 521 (2001); *see Johnson v. Johnson*, 14 N.C. App. 40, 187 S.E.2d 420 (1972) (citing with approval the general policy of the rules is to disregard technicalities and form and determine the rights of litigants on the merits). The other principle is that "[i]t is presumed that the legislature acted in accordance with reason and common sense and that it did not intend an unjust or absurd result . . . ." *King v. Baldwin*, 276 N.C. 316, 325, 172 S.E.2d 12, 18 (1970).

The Legislature presumably had a reason to direct Rule 9(j) extension motions to the resident superior court judge. It is not entirely clear what those reasons were. Defendants attempt to list reasons they feel are behind the language, including that resident judges know the doctors, lawyers, availability of experts, and numerous other contingencies in their home counties better than any other judge. Certainly the Legislature did not intend to close off the extension benefit from a large portion of the citizenry by using the designation "resident." Thus, we conclude that Rule 9(j) extension motion is to be heard by a resident judge when one is available, but when the resident judge is unavailable or nonexistent, it is proper for the duly appointed presiding superior court judge to hear and sign the motion.

Defendant Dr. Russell cites many instances in his brief where the Legislature has used the "resident" designation, arguing that the Legislature's wishes are to be respected. The Doctor missed the one provision that is relevant to this case. N.C. Gen. Stat. § 7A-47, titled "Powers of regular judges holding courts by assignment or exchange" reads:

> A regular superior court judge, duly assigned to hold the courts of a county, or holding such courts by exchange, shall have the *same powers* in the district or set of districts . . . in which the county is located, in open court and in chambers as *the resident judge* or any judge regularly assigned to hold the courts of the district or set of districts . . . and his jurisdiction in chambers shall extend until the session is adjourned or the session expires by operation of law, whichever is later.

N.C. Gen. Stat. § 7A-47 (1999) (emphasis added).

According to the above statute, a presiding superior court judge, duly assigned by the Chief Justice of the Supreme Court, acts with the power of the resident superior court judge. Thus, Judge Fullwood was technically acting in a "resident" capacity when he ruled on plaintiff's motion.

We reverse the trial court's granting of defendants' motions to dismiss and remand for trial.

Judges BRYANT and JOHN concur.