KEITH KEGLEY, AND KIMBER KEGLEY, CECIL HAMMONDS, AND MAGGIE HAMMONDS, AND CHADWICK J. McKEOWN, PETITIONERS v. THE CITY OF FAYETTEVILLE, A NORTH CAROLINA MUNICIPALITY, RESPONDENT

No. COA04-1123

(Filed 7 June 2005)

**Armed Services; Cities and Towns— annexation—federal Servicemembers Civil Relief Act—plain statement rule**

The trial court did not err in an annexation case by granting respondent city's motion to dismiss based on the petition being time-barred even though petitioners contend the federal Servicemembers Civil Relief Act tolled their time to seek review, because: (1) petitioners sought judicial review after expiration of the 60-day period provided by N.C.G.S. § 160A-60(a); (2) although the plain statement rule applies when a federal statute intends to interfere with a state's regulation of its municipalities, the federal Act in this case does not contain a plain statement showing an unmistakably clear intent to intrude upon North Carolina's state sovereignty in the area of annexations when the word "annexa-

tion" does not appear anywhere in the statute, the Act's fundamental purpose is to address personal financial claims rather than large-scale government action, and petitioners failed to cite a single case which applies the Act to nonpersonal claims challenging large-scale government action; and (3) petitioners have not asserted any personal right and the remedy sought is too broad when it could halt the annexation almost indefinitely, thus going beyond the stated purpose of the Act.

Appeal by petitioners from order entered 28 June 2004 by Judge Gary L. Locklear in Cumberland County Superior Court. Heard in the Court of Appeals 13 April 2005.

*Parker, Poe, Adams, & Bernstein, L.L.P., by R. Bruce Thompson II, and Anthony Fox; and City Attorney Karen M. McDonald, for respondent appellee.*

*The Brough Law Firm, by Robert E. Hornik, Jr., for petitioner appellants.*

*Andrew L. Romanet, Jr., and Gregory F. Schwitzgebel, III, for North Carolina League of Municipalities, Amicus Curiae.*

McCULLOUGH, Judge.

Petitioner appellants appeal from an order granting respondent's motion to dismiss. On 24 November 2003, the City of Fayetteville adopted an ordinance annexing approximately 28 square miles of land and over 40,000 residents. The annexation was to become effective on 30 June 2004. In North Carolina, an owner of annexed property can seek judicial review if he or she files a petition "[w]ithin 60 days following the passage of an annexation ordinance." N.C. Gen. Stat. § 160A-50(a) (2003).

A group of Cumberland County residents, the Gates Four community, filed the only timely petition for review. The City of Fayetteville and Gates Four settled their dispute, and pursuant to N.C. Gen. Stat. § 160A-50(m) (2003), the superior court entered a consent judgment on 12 May 2004. Thus, the Gates Four community was excluded from the annexation.

Petitioners filed this challenge on 14 June 2004. This was five months after the 60-day period had ended, two-and-a-half years after the annexation was first publicized, and sixteen days before the annexation's effective date.

Although they petitioned for review after the 60-day period ended, petitioners argued that the federal Servicemembers Civil Relief Act ("Act") tolled their time to seek review. The trial court rejected this contention and dismissed the action as time-barred on 28 June 2004. Petitioners appeal.

On appeal, petitioners argue that the trial court erred by dismissing their petition as time-barred. We disagree and affirm the decision of the trial court.

Petitioners contend that the trial court erred in dismissing their appeal. Although they acknowledge that they sought judicial review after the 60-day period ended, petitioners argue that the Act tolled their time to seek review. They rely on Section 206 of the Act which states that:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

50 App. U.S.C. § 526 (as amended by Pub. L. 108-189, § 206(a) Dec. 19, 2003)).

Petitioners suggest that since they were in the military during the 60-day period, the Act tolled the statutory period for them. We disagree.

As announced by the United States Supreme Court, the plain statement rule dictates that a federal statute cannot be interpreted to intrude upon state sovereignty unless the statute contains a plain statement showing an unmistakably clear intent to intrude. *Gregory v. Ashcroft*, 501 U.S. 452, 460-61, 115 L. Ed. 2d 410, 424 (1991). "This plain statement rule is nothing more than an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." *Id.* at 461, 115 L. Ed. 2d at 424. Therefore, the plain statement rule preserves the balance between state and federal power by ensuring that courts do not accidentally erode state power where Congress did not intend such a result.

Recently, the United States Supreme Court confirmed that the plain statement rule applies when a federal statute intends to inter-

fere with a state's regulation of its municipalities. *Nixon v. Missouri Municipal League*, 541 U.S. 125, 158 L. Ed. 2d 291 (2004). In *Nixon*, the federal Telecommunications Act of 1996 prohibited the states from barring "any entity" from the telecommunications business. *Id.* at 128, 158 L. Ed. 2d at 298. However, the State of Missouri adopted a statute prohibiting its own municipalities from providing telecommunications services. *Id.* at 129, 158 L. Ed. 2d at 298. Municipalities in Missouri challenged the state statute arguing that they fell within the federal Act's broad "any entity" language; the municipalities also claimed that the federal statute preempted the state law and invalidated Missouri's attempt to bar them from the telecommunications business. *Id.*

The United States Supreme Court rejected the municipalities' claim and declined to inject a federal statute into a state's sovereign right to govern its municipal subdivisions:

> Preemption [by the Federal Telecommunications Act] would come only by interposing federal authority between a State and its municipal subdivisions, which our precedents teach, "are created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them in its absolute discretion."

*Id.* at 140, 158 L. Ed. 2d at 305 (citation omitted). The Supreme Court also explained that

> federal legislation threatening to trench on the States' arrangements for conducting their own governments should be treated with great skepticism, and read in a way that preserves a State's chosen disposition of its own power, in the absence of the plain statement *Gregory* requires.

*Id.* Therefore, in spite of the broad "any entity" language, the Supreme Court found no plain statement for the Telecommunications Act to apply to municipalities.

Although they are undertaken by municipalities, annexations derive from this State's sovereign power. The North Carolina Constitution vests the General Assembly with the exclusive, but delegable power, to regulate municipal borders. N.C. Const. art. VII, § 1. Municipal borders are fundamentally a State concern because municipalities are agents of the State. *See Smith v. Winston-Salem*, 247 N.C. 349, 354, 100 S.E.2d 835, 838 (1957) ("A municipal corporation, city or town, is an agency created by the State to assist in the civil

government of a designated territory and the people embraced within these limits."). Therefore, to interfere with how the General Assembly shapes municipal borders is to interfere with its sovereignty.

The issue is whether the federal Act contains a plain statement showing an unmistakably clear intent to intrude upon North Carolina's state sovereignty in the area of annexations. For several reasons, we conclude that it does not.

First, the word "annexation" appears nowhere in the statute, and petitioners have not cited a single case in which the tolling provision applied to annexations. It is difficult to imagine that Congress, intending to so dramatically alter state annexations, did so casually and quietly. If Congress truly aimed to overhaul state annexations, it surely would have used the word "annexation" at least once.

Second, the Act's fundamental purpose is to address personal financial claims, not large-scale government action. Numerous provisions seek to relieve servicemembers from worrying about standard financial claims and transactions. For instance, Section 201 limits creditors' ability to obtain default judgments against servicemembers. 50 App. U.S.C. § 525 (as amended by Pub. L. 108-189, § 201, Dec. 19, 2003). Section 207 lowers interest rates for indebtedness. *Id.* at § 207. Section 301 restricts evictions of servicemembers. *Id.* at § 301. And, other sections affect termination of motor vehicle leases, limit foreclosures against property, and protect servicemembers' rights under life insurance policies. Finally, and perhaps most importantly, petitioners have failed to cite a single case which applies the Act to non-personal claims challenging large-scale government action.

In fact, accepting respondents' position would cripple the way municipalities determine their borders. Indefinitely tolling the time to challenge annexations would give individual servicemembers substantial power over governments and entire communities. Petitioners concede that under their interpretation of the law, a single servicemember could challenge the validity of an annexation for years or even decades after the annexation's completion. Our courts presume that the legislature acted reasonably and " 'did not intend an unjust or absurd result. . . .' " *Best v. Wayne Mem'l Hosp., Inc.*, 147 N.C. App. 628, 635, 556 S.E.2d 629, 634 (2001) (citation omitted), *appeal dismissed, disc. review denied*, 356 N.C. 433, 572 S.E.2d 426 (2002). Allowing a single servicemember to hold up an annexation for years and perhaps decades would paralyze a municipality's ability to provide services to its citizens. This absurd and potentially damaging

result goes beyond the stated purpose of the Act which allows "the *temporary* suspension of judicial and administrative proceedings[.]" 50 App. U.S.C. §, 525 (as amended by Pub. L. 108-189 § 2(2)). It further reveals that Congress did not intend to intrude upon North Carolina's state sovereignty in the area of annexations.

Finally, we cannot grant petitioners' relief because it is overly broad. Section 2 of the Act is designed "to provide for the *temporary* suspension of judicial and administrative proceedings . . . that may adversely affect the civil *rights of servicemembers during their military service." Id.* (emphasis added). In the present case, petitioners have not asserted any personal right. They have not sought to limit the scope of the annexation or exclude their property from the annexation as the members of the Gates Four community did. Instead, the relief requested is a complete nullification, or at the very least, a potential long-term holdup, of the annexation. This remedy is broad and would go beyond the stated purpose of the Act. Nullifying an annexation is not simply an action to preserve the rights of service-members during their military service. Rather, it would allow the tolling provision to be improperly applied to *non-servicemembers*, people who would then receive the benefits and burdens of having the annexation nullified even if they failed to take timely action in seeking judicial review. Furthermore, as petitioners have acknowledged, the relief they request is not temporary because it could halt the annexation almost indefinitely.

While we recognize and appreciate the sacrifices of the members of our armed forces, we believe that Congress did not intend to defeat municipalities' ability to operate, including their ability to complete annexations with finality. Petitioners did not seek to exempt their own property and did not seek judicial review within the 60-day time period. The Act's tolling provision has never been applied to large-scale governmental action, such as annexations. Finally, since the Act does not reveal a clear intent to intrude upon North Carolina's state sovereignty in the area of annexations, we hold that the trial court acted properly in granting respondent's motion to dismiss. The order is

Affirmed.

Judges HUNTER and LEVINSON concur.